Filed 6/22/16

<u>CERTIFIED FOR PARTIAL PUBLICATION</u>[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| DWAYNE HARRIS, | B262504 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TC027966) |
| v. | |
| TAP WORLDWIDE, LLC, et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, William P. Berry, Judge.  Reversed.

Fernald Law Group, Rachel D. Stanger, Brandon C. Fernald and Gina McCoy for Defendants and Appellants.

Cummings & Franck, Scott O. Cummings and Lee Franck for Plaintiff and Respondent.

---

[*]    Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of part III(C).

## I.  INTRODUCTION

Defendants, TAP Worldwide, LLC, Eddie Rivera and Alex Dominguez, appeal from an order denying their motion to compel arbitration.  Plaintiff, Dwayne Harris, filed a complaint against defendants alleging wrongful termination and violations of the Fair Employment and Housing Act and the Labor Code.  Defendants moved to compel arbitration relying upon an arbitration agreement which plaintiff acknowledged receiving.  Plaintiff asserted there was no arbitration agreement and alternatively argued any agreement was unconscionable.   Defendants' motion to compel arbitration was denied.

Defendants assert the trial court erred because the arbitration agreement attached as Appendix A to the Employer Handbook is enforceable.    The undisputed facts demonstrate:  there is a valid arbitration agreement; the agreement to arbitrate is not illusory; and, as discussed in the unpublished part of our opinion, the arbitration agreement is not unconscionable to the degree that it is unenforceable.  Accordingly, we reverse the order under review.

## II.  BACKGROUND

### A.  Plaintiff's Complaint

On October 10, 2014, plaintiff filed his complaint.    Plaintiff alleges he was employed by TAP Worldwide, LLC which utilizes the fictitious business name of 4 Wheel Parts Performance Center at a warehouse located in Compton, California.  Mr. Rivera was the warehouse manager for TAP Worldwide, LLC.  Mr. Dominguez was the

lead for the department and a supervisor and manager for TAP Worldwide, LLC. Plaintiff is African-American.

Plaintiff alleges racial discrimination, harassment and retaliation towards himself and other African-American employees by defendants. Plaintiff alleges he and other employees were denied meal and rest breaks and overtime pay and other Labor Code violations. Plaintiff is married and requested leave under the California Family Rights Act due to the serious health condition of a family member. TAP Worldwide, LLC denied him his Family Rights Act rights and his requested time off. Plaintiff alleges Mr. Dominguez used a forklift in an unsafe manner. Mr. Dominguez pushed plaintiff with a forklift. This occurred while plaintiff was operating another unidentified vehicle. Plaintiff reported these health and safety issues to TAP Worldwide, LLC. TAP Worldwide, LLC terminated plaintiff's employment on December 18, 2013.

Plaintiff brought 12 causes of action: racial discrimination in violation of the Fair Employment and Housing Act ; marital status discrimination and retaliation in violation of the Fair Employment and Housing Act ; association discrimination and retaliation in violation of the Fair Employment and Housing Act ; interference with California Family Rights Act rights and retaliation ; retaliation for opposing practices forbidden by the Fair Employment and Housing Act ; hostile work environment in violation of the Fair Employment and Housing Act ; violation of Labor Codes sections 233 and 234 for denial of kin care ; wrongful termination in violation of public policy ; non-payment of wages, including overtime, in violation of the Division of Labor Standards Enforcement and the

3

Labor Code ; failure to provide meal and rest breaks in violation of the Labor Code ; intentional severe emotional distress infliction ; and failure to do everything reasonably necessary to prevent discrimination, harassment and retaliation in violation of the Fair Employment and Housing Act.  Plaintiff sought as relief damages, costs of suit including attorney fees, lost wages, declaratory relief, waiting time penalties, and other injunctive and equitable relief.

B.  Defendants' Motion to Compel Arbitration

On November 17, 2014, defendants moved to compel arbitration.  Defendants relied on three documents:  the Employee Handbook; the Current Employment Alternative Dispute Resolution Policy (the arbitration agreement); and  the "**CURRENT EMPLOYMENT ALTERNATIVE DISPUTE RESOLUTION AGREEMENT**" which was attached as Appendix A to the Employee Handbook.  Plaintiff acknowledged in writing receiving the Employee Handbook with the attached arbitration agreement on September 16, 2012, when he became an employee of TAP Worldwide, LLC.  He had previously worked at TAP Worldwide, LLC but as an employee of a temporary employment service.  The written acknowledgement states:  "**ACKNOWLEDGEMENT OF RECEIPT** [¶]  I hereby confirm and acknowledge receipt of [defendant's]:  [¶]  [] Alternative Dispute Resolution Agreement for current employees; and  []  Personnel Policy Handbook."  The parties do not dispute that the Personnel Policy Handbook is the Employee Handbook.   Plaintiff declared he actually signed the acknowledgement of

4

receipt of the documents on September 16, 2012, but the year was erroneously listed as 2010.

Page one of the Employee Handbook states, "It is each employee's responsibility to read, understand and follow the provisions of this Handbook; accordingly, you will find it to your advantage to read promptly the entire Handbook." Page nine of the handbook is entitled, "**MANDATORY ALTERNATIVE DISPUTE RESOLUTION BINDING ARBITRATION OF CLAIMS**."  Page nine of the employee handbook then states:  "The Company has adopted mandatory binding arbitration as a means of dispute resolution regarding any and all employment related claims that may exist between the Company and an employee, and vice versa.  Confirmation of receipt and agreement to this policy is an absolute prerequisite to your hiring by, and continued employment with, the Company.  [¶]  Under this policy, should any employment related dispute arise between you and the Company, for whatever reason, both you and the Company will be required to resolve the dispute through binding arbitration.  This means that neither you nor the Company can file a civil lawsuit against the other to seek redress for any employment related grievances.  [¶]  Binding arbitration has proven itself to be a highly useful and cost effective means to resolving disputes which may arise between employer and employee.  We hope that through this policy, any claims that may arise between you and the Company can be resolved quickly, efficiently and to the satisfaction of everyone involved.  [¶]  For a complete summary of the Company's policy on mandatory binding arbitration, please see Appendix A to this Handbook, as well as the Agreement to

Arbitrate, a copy of which you will be required to execute prior to employment with the Company. [¶] If, for any reason, an applicant fails to execute the Agreement to Arbitrate yet begins employment, that employee will be deemed to have consented to the Agreement to Arbitrate by virtue of receipt of this Handbook."

Appendix A to the Employee Handbook is entitled: "**CURRENT EMPLOYMENT ALTERNATIVE DISPUTE RESOLUTION AGREEMENT**." The introduction to the alternative dispute agreement begins, "In consideration of TAP WORLDWIDE, LLC ('the Company') continuing to offer you ('Employee') gainful employment as an at-will employee (sometimes collectively referred to as 'The Parties' or individually as 'Each Party'), and in consideration of Employee continuing to accept said at-will employment with the Company, the Company hereby offers and adopts the following terms and conditions for Employee's continued employment. . . ." Paragraph 1 of the arbitration agreement states: "**Covered Claims:** Each Party will hereby submit to binding arbitration, and waive any and all rights to civil trial, any dispute, claim or controversy arising out of or in any way connected with any dispute relating to the terms and/or conditions of employment which includes, but is not limited to: [¶] (a) Any and all claims arising under either federal or state law, including but not limited to claims arising under Title VII of the Civil Rights Act (federal), Equal Pay Act (federal), Americans with Disabilities Act (federal), Age Discrimination in Employment Act (federal), Fair Labor Standards Act (federal), Families with Medical Leave Act (federal), Labor Management Relations Act (federal), Employee Retirement Income Security Act

6

(federal), Fair Employment and Housing Act (state), and the Unfair Business Practices Act (state), as well as any and all claims under federal and/or state law involving law against discrimination, including but not limited to discrimination based on race, sex, sexual orientation, gender, religion, national origin, age, marital status, handicap (actual or perceived), disability (actual or perceived) and/or harassment on any of the foregoing grounds; and  [¶]  (b)  Any and all claims arising under either contract or tort principals, including but not limited to claims for breach of contract (oral or written), breach of implied covenant of good faith and fair dealing, negligent and/or intentional infliction of emotional distress, wrongful termination in violation of statute (see para. (a) above), wrongful termination in violation of common law, wrongful termination in violation of public policy, retaliation (related to provision of workers' compensation benefits, exercise of a statutory right (see para. (a) above) or otherwise) and/or fraud.  [¶]  Each Party hereby recognizes and acknowledges that the foregoing paragraphs are meant to be only illustrative and not exhaustive as to the nature and type of all employment related disputes which will be subject to binding arbitration upon implementation of this Agreement.  [¶]  Each Party will also hereby submit to binding arbitration any dispute, claim or controversy arising out of or in any way connected with any dispute relating to the interpretation and/or meaning of any term contained within this Agreement or the enforceability and/or scope of this Agreement."  It is undisputed plaintiff's causes of action would all fall within the scope of the arbitration agreement if it is enforceable.

Defendants also argued in the trial court the arbitration agreement specifically provided that plaintiff is deemed to have voluntarily consented to arbitration by continuing his employment. Paragraph 10 of the arbitration agreement provides: "If Employee voluntarily continues his/her employment with TAP [Worldwide, LLC] after the effective date of this Policy [or January 1, 2010], Employee will be deemed to have knowingly and voluntarily consented to and accepted all of the terms and conditions set forth herein without exception. This Policy shall continue in effect indefinitely, except that TAP [Worldwide, LLC] may modify and/or terminate this Policy as to future disputes or claims to the extent necessary or desired so to comply with any future developments or changes in the law. Thirty (30) days written notice will be provided by TAP [Worldwide, LLC] prior to the effective date of any such modification and/or termination of this Policy. Any such modification and/or termination of this Policy shall only be effective with respect to any dispute or claim arising after the effective date of the modification and/or termination."

## C. Plaintiff's Arguments

In the trial court, plaintiff argued there was no valid arbitration agreement because he did not sign any such agreement. Plaintiff asserted he only acknowledged receipt of documents. Plaintiff cited the Employee Handbook which referred to a document called an "Agreement to Arbitrate." Plaintiff declared he never received nor signed any "Agreement to Arbitrate." Plaintiff contended in the trial court that acknowledging

8

receipt of the Employee Handbook was insufficient to demonstrate an agreement to arbitrate.

Plaintiff also asserted a provision in the Employee Handbook rendered the arbitration agreement illusory and unenforceable. Plaintiff cited a document attached to the Employee Handbook entitled "ACKNOWLEDGEMENT AND RECEIPT OF EMPLOYEE HANDBOOK," which provided, "I understand that except for the 'employment at-will' relationship, any and all policies, practices, and benefit programs which are described in this [Employee] Handbook can be changed, modified, supplemented, revised or rescinded at any time by the Company, in a writing issued by the Human Resources Manager or signed by an officer of the Company, with or without prior notice to me."

Plaintiff alternatively argued any arbitration agreement was unconscionable. Plaintiff declared he was never informed there was an arbitration agreement. Plaintiff also argued the terms were unfairly one-sided because the agreement could be rewritten by TAP Worldwide, LLC without notice, as stated above.

### C. Trial Court's Ruling

On January 8, 2015, the hearing was held on defendants' motion to compel arbitration. On February 20, 2015, the trial court issued a minute order denying defendants' motion. Defendants did not request a statement of decision pursuant to Code of Civil Procedure section 1291. Defendants subsequently appealed the court's order.

9

## III. DISCUSSION

### A. Existence of Arbitration Agreement

California law favors enforcement of valid arbitration agreements. (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 97 (*Armendariz*); *Broughton v. Cigna Healthplans* (1999) 21 Cal.4th 1066, 1074.) Because arbitration is a contractual matter, a party who has not agreed to arbitrate a controversy cannot be compelled to do so. (*Grey v. American Management Services* (2012) 204 Cal.App.4th 803, 808; *Sparks v. Vista Del Mar Child and Family Services* (2012) 207 Cal.App.4th 1511, 1518 (*Sparks*).) When the material facts are undisputed, we determine the existence of an agreement to arbitrate de novo. (*Casas v. Carmax Auto Superstores Cal. LLC* (2014) 224 Cal.App.4th 1233, 1235 (*Casas*, hereafter); *Sparks*, *supra*, 207 Cal.App.4th at p. 1519.) The party seeking arbitration bears the initial burden of demonstrating the existence of an arbitration agreement. (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236 (*Pinnacle*); *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972; *Sparks*, *supra*, 207 Cal.App.4th at p. 1518.) Once the moving party has satisfied its burden, the litigant opposing arbitration must demonstrate grounds which require that the agreement to arbitrate not be enforced. (*Pinnacle*, *supra*, 55 Cal.4th at p. 236; *Engalla v. Permanente Medical Group, Inc.*, *supra*, 15 Cal.4th at p. 972; *Sparks*, *supra*, 207 Cal.App.4th at p. 1518.)

Our colleague, Presiding Justice Ignazio J. Ruvolo of Division Four of the First Appellate District, succinctly explained the controlling principles of appellate review we are to apply: "'In California, "[g]eneral principles of contract law determine whether the parties have entered a binding agreement to arbitrate." [Citations.]' (*Pinnacle*[, *supra*, 55 Cal.4th at p. 236].) 'An essential element of any contract is the consent of the parties, or mutual assent.' [Citation.] (*Donovan v. RRL Corp.* (2001) 26 Cal.4th 261, 270 (*Donovan* ).) Further, the consent of the parties to a contract must be communicated by each party to the other. (Civ. Code, § 1565, subd. 3.) 'Mutual assent is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings.' [Citation.] (*Alexander v. Codemasters Group Limited* (2002) 104 Cal.App.4th 129, 141, disapproved on other grounds in *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 524.) Because there are no facts in dispute, the existence of a contract is a question we decide de novo. (*Sparks*[, *supra*, 207 Cal.App.4th at p. 1519].)" (*Serafin v. Balco Properties Ltd., LLC* (2015) 235 Cal.App.4th 165, 173 (*Serafin*).)

Defendants assert plaintiff agreed to the arbitration agreement when he acknowledged receiving the written agreement and began working as a permanent employee. Here, it is undisputed plaintiff acknowledged receipt of both the arbitration agreement and the Employee Handbook prior to his commencing employment with TAP Worldwide, LLC. Plaintiff expressly acknowledged such in writing. It is also undisputed the arbitration agreement states in Paragraph 10, "If Employee voluntarily continues

11

his/her employment with TAP [Worldwide, LLC] after the effective date of this Policy, Employee will be deemed to have knowingly and voluntarily consented to and accepted all of the terms and conditions set forth herein without exception." The Employee Handbook provides, "If for any reason, an applicant fails to execute the Agreement to Arbitrate yet begins employment, that employee will be deemed to have consented to the Agreement to Arbitrate by virtue of receipt of this Handbook." Based on the uncontroverted language in the Employee Handbook and the arbitration agreement, plaintiff consented to arbitrate his claims when he began and continued working for TAP Worldwide, LLC.

Plaintiff asserts that under *Sparks*, *supra*, acknowledgment of receiving the Employee Handbook was insufficient to demonstrate a valid arbitration agreement existed. In *Sparks*, the plaintiff received a handbook for which he acknowledged receipt. (*Sparks*, *supra*, 207 Cal.App.4th at p. 1516.) This division held: "The Handbook, which was 'distributed' to all employees, included in one of many clauses an arbitration clause not prominently distinguished from the other clauses. The arbitration provision is not specifically highlighted, and there is no place for the employee to acknowledge it in writing. . . . [¶] A relevant case in California is *Mitri v. Arnel Management Co.* (2007) 157 Cal.App.4th 1164 (*Mitri*), which, as here, involved an employee handbook stating that "'[a]ny dispute arising out of employment with the Company, as allowed by law, will be settled by binding arbitration."' (*Id.* at p. 1167.) The court held that the employer did not establish the employee's consent to binding arbitration of claims arising out of the

12

employment relationship because the handbook also stated that "'[a]s a condition of employment, all employees are required to sign an arbitration agreement,'" and further stated that "'[e]mployees will be provided a copy of their signed arbitration agreement.'" (*Id.* at pp. 1167, 1168.) According to the court in *Mitri,* these two provisions indicated an intent to have employees sign a separate arbitration agreement, which the employee in that case did not sign. (*Id.* at pp. 1170-1171.) The court said that the acknowledgment of receipt form signed by employees did not constitute evidence of an employee's acquiescence to the arbitration agreement provision in the employee handbook because the acknowledgment form relegated the employee handbook's status to "'an excellent resource for employees with questions about the Company.'" (*Id.* at p. 1173.) The court further stated that the employee handbook was "'designed to acquaint new employees . . . with Human Resource policies, operational issues, employee services, and benefits that reflect the desire to provide a professional work environment.'" (*Ibid.*) The court noted that the acknowledgment of receipt form made no reference to an agreement by the employee to abide by the handbook's arbitration provision. (*Ibid.*) Although *Mitri* is distinguishable from the instant case, its observations as to the purpose of an employee handbook and the significance of the acknowledgment form are applicable to the Handbook and acknowledgment form here. (See also *Romo v. Y-3 Holdings, Inc.* (2001) 87 Cal.App.4th 1153, 1159-1160; *Ajamian v. CantorCO2e, L.P.* (2012) 203 Cal.App.4th 771, 804-805.) [¶] The language in the Handbook here, as the language at issue in *Mitri, supra,* 157 Cal.App.4th 1164, suggests that the Handbook, which was 'distributed' to all

13

employees, was informational rather than contractual. Thus, because defendant failed to point out or call attention to the arbitration requirement in the Acknowledgment, plaintiff should not be bound to arbitrate." (*Id.* at pp. 1519-1520.)

Plaintiff asserts that like the employee in *Sparks*, defendants failed to sufficiently call attention to the arbitration requirement in the acknowledgement. Thus, plaintiff argues he should not be required to arbitrate his claims. *Sparks* is materially distinguishable on two specific grounds.

First, the acknowledgement form which plaintiff signed included acknowledging receiving *both* the Employee Handbook and the attached arbitration agreement. Unlike the situation in *Sparks*, the arbitration agreement here was specifically highlighted in the signed acknowledgement form as the Appendix to the Employee Handbook. Moreover, the first page of the Employee Handbook's table of contents refers the reader to page nine with the subject heading of "**BINDING ARBITRATION OF CLAIMS**." The obligation to arbitrate is highlighted at the top of page nine in bold underscored letters and reference is expressly made to Appendix A of the Employee Handbook. And page nine states without equivocation that receipt and agreement to the mandatory arbitration policy is "an absolute prerequisite" to hiring and continued employment. Further, page nine states, "If, for any reason, an applicant fails to execute the Agreement to Arbitrate yet begins employment, that employee will be deemed to have consented to the Agreement to Arbitrate by virtue of receipt of this Handbook."

In his declaration, plaintiff admits that the Employee Handbook contains Appendix A but denies ever signing an agreement to arbitrate. In addition, plaintiff's declaration states that he had no idea there was an arbitration provision when he received the Employee Handbook The fact that defendant either chose not to read or take the time to understand these provisions is legally irrelevant. (See, e.g., *Pinnacle*, *supra*, 55 Cal.4th at p. 226 ["An arbitration clause within a contract may be binding on a party even if the party never actually read the clause."]; *Madden v. Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 710 [general rule is one who assents to a contract is bound by its provisions and cannot complain of unfamiliarity with the language]; *Brookwood v. Bank of America* (1996) 45 Cal.App.4th 1667, 1674 [reasonable diligence requires reading of contract before signing].)

Second, an agreement to arbitrate may be express or implied so long as it is written. After restating the hard and fast rule that general contract law determines the enforceability of an arbitration agreement, our colleagues in Division One of our appellate district held: "This means that a party's acceptance of an agreement to arbitrate may be express (e.g., *Mago v. Shearson Lehman Hutton Inc.* (9th Cir. 1992) 956 F.2d 932 [agreement to arbitrate included in job application]; *Nghiem v. NEC Electronic, Inc.* (9th Cir. 1994) 25 F.3d 1437 [agreement to arbitrate included in handbook executed by employee]; *Lagatree v. Luce, Forward, Hamilton & Scripps* (1999) 74 Cal.App.4th 1105 [employer may terminate employee who refuses to sign agreement to arbitrate]) or implied-in-fact where, as here, the employee's continued employment constitutes her

acceptance of an agreement proposed by her employer (*Asmus v. Pacific Bell* (2000) 23 Cal.4th 1, 11 [implied acceptance of changed rules regarding job security] [*Asmus*]; *DiGiacinto v. Ameriko-Omserv Corp.* (1997) 59 Cal.App.4th 629, 635 [implied acceptance of changed compensation rules])." (*Craig v. Brown & Root, Inc.* (2000) 84 Cal.App.4th 416, 420.)

Here, plaintiff was offered employment on an at will basis under the terms of the Employee Handbook. Plaintiff unequivocally accepted the offer of employment by commencing to work for TAP Worldwide,LLC for which he was paid. Plaintiff's commencement of performance under the Employee Handbook constituted assent to its terms. Under California law, assent to an offer can occur either by way of performance under the contract or the acceptance of consideration. (Civ. Code, § 1584 ["Performance of the conditions of a proposal, or the acceptance of the consideration offered with a proposal, is an acceptance of the proposal."]; *Davis v. Jacoby* (1934) 1 Cal.2d 370, 378 ["'Performance of the conditions of a proposal, . . . is an acceptance of the proposal.'"]; *Estate of Klauenberg* (1973) 32 Cal.App.3d 1067, 1070 ["Performance and acceptance of the consideration constitute . . . modes of acceptance."]; *Blaustein v. Burton* (1970) 9 Cal.App.3d 161, 183 ["'"[The] acceptance of the consideration offered with a proposal, is acceptance of the proposal"'"].) And page nine of the Employee Handbook expressly addressed the effect of an employee's failure to execute the attached arbitration agreement. According to page nine, upon commencing employment, the employee was deemed to have consented to the agreement to arbitrate by virtue of acceptance of the

16

Employee Handbook. Plaintiff cannot have it both ways, acceptance of the at will job offer with all its emoluments and no responsibility to abide by one of its express conditions.

Neither these contractual terms nor this scenario were present in *Sparks*. Accordingly, defendants have demonstrated Tap Worldwide,LLC and plaintiff entered into an arbitration agreement. Given the foregoing analysis we need not discuss the effect of Civil Code section 1584 which states, "Performance of the conditions of a proposal, or the acceptance of the consideration offered with a proposal, is an acceptance of the proposal." Further, we need not address those cases which hold that when an employee signs an acknowledgment of receipt of an employee handbook, she or he is bound by its contents. And this includes an agreement to arbitrate contained within the employee handbook. (*24 Hour Fitness, Inc. v. Superior Court* (1998) 66 Cal.App.4th 1199, 1215 [acknowledgement referred to arbitration provision in employee handbook] (*24 Hour Fitness*); *Boys Club of San Fernando Valley, Inc. v. Fidelity & Deposit Co.* (1992) 6 Cal.App.4th 1266, 1271-1272 [party bound by incorporation of a contract into a performance bound]; *Ware v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1972) 24 Cal.App.3d 35, 41 [broker's signature on application that referred not to arbitration but to exchange rules which contained an agreement to arbitrate disputes]; *Gear v. Webster* (1968) 258 Cal.App.2d 57, 61 [realtor who agreed to abide by association bylaws bound by arbitration agreement contained therein]; see *Adajar v. RWR Homes, Inc.* (2008) 160 Cal.App.4th 563, 569; Knight et al., Cal. Practice Guide: Alternative Dispute Resolution

17

(The Rutter Group 2015) ¶ 5:18, pp. 5-12 to 5-13.)  Here, page nine of the Employee Handbook expressly addresses the situation where an employee fails to execute the arbitration agreement and accepts employment.  Given this specific contractual language, this is a stronger case for finding an agreement to arbitrate than the immediately foregoing incorporation by reference cases.

### B.  The Arbitration Agreement Was Not Illusory

Plaintiff also argues the arbitration agreement was illusory because it could be modified by TAP Worldwide, LLC unilaterally.  In order for a contract to be valid, the parties must exchange promises that represent legal obligations.  (*Bleecher v. Conte* (1981) 29 Cal.3d 345, 350; *Scottsdale Ins. Co. v. Essex Ins. Co.* (2002) 98 Cal.App.4th 86, 94-95.)  A contract is unenforceable as illusory when one of the parties has the unfettered or arbitrary right to modify or terminate the agreement or assumes no obligations thereunder.  (*Asmus*, *supra*, 23 Cal.4th at pp. 15-16; *Scottsdale Ins. Co. v. Essex Ins. Co.*, *supra*, 98 Cal.App.4th at p. 95; *Principal Mutual Life Ins. Co. v. Vars, Pave, McCord & Freedman* (1998) 65 Cal.App.4th 1469, 1488-1489; *Fabbro v. Dardi & Co.* (1949) 93 Cal.App.2d 247, 251.)  Also, a contract is illusory where one party provides no legal consideration.  (See *Martin v. World Sav. & Loan Assn.* (2001) 92 Cal.App.4th 803, 809.)  The Employee Handbook broadly provides that TAP Worldwide, LLC can unilaterally modify any of its policies, which would include the arbitration agreement, without notice:  "I understand that except for the 'employment at-will' relationship, any and all policies, practices and benefit programs which are described in

18

this Handbook can be changed, modified, supplemented, revised or rescinded at any time by the Company, in a writing issued by the Human Resources Manager or signed by an officer of the Company, with or without prior notice to me." Plaintiff again relies upon *Sparks* where this division held**:** "An agreement to arbitrate is illusory if, as here, the employer can unilaterally modify the handbook. [Citations.]" (*Sparks*, *supra*, 207 Cal.App.4th at p. 1523.) Plaintiff argues that the arbitration agreement or the contractual obligations arising from Employee Handbook are illusory and thus unenforceable. We disagree with plaintiff's illusory contract-related arguments.

To begin with, the present case is different from *Sparks* because the arbitration agreement itself contains a distinct qualified modification provision. As noted, in support of its illusory contract contention, plaintiff relies on the broadly stated general authority to modify the Employee Handbook and its related contractual obligations. But Appendix A, the arbitration agreement, contains highly specific language which sharply limits the authority of Tap Worldwide, LLC to modify the arbitration agreement. The relevant language concerning modification set forth in the arbitration agreement states: "Each Party hereby recognizes and acknowledges that this Agreement can only be modified by a writing, signed by both parties. No oral modifications shall have any force or effect. [¶] . . . [¶] This Agreement shall continue in effect indefinitely, except that TAP [Worldwide, LLC] may modify and/or terminate this Agreement as to future disputes or claims to the extent necessary or desired so to comply with any future developments or changes in the law. Thirty (30) days written notice will be provided by TAP [Worldwide,

19

LLC] prior to the effective date of any such modification and/or termination of this Agreement. Any such modification and/or termination of this Policy shall only be effective with respect to any dispute or claim arising after the effective date of the modification and/or termination." The arbitration agreement permits TAP Worldwide, LLC to modify the arbitration agreement as to future claims, with a 30-day written notice. However, the arbitration agreement may only be modified "so to comply with future developments or changes in the law" and in a writing signed by the employer and employee. No such language was present in the arbitration provisions at issue in *Sparks*. And the mutual modification provisions do not apply to this case because no changes have been made to the Employer Handbook or Appendix A. As a matter of law, the qualified modification provision in the arbitration agreement cannot apply to this case. It can *only* apply to future disputes; not the present one.

The general modification right accorded to Tap Worldwide, LLC in the Employee Handbook does not extend to the arbitration agreement in Appendix A. As is apparent, the two modification provisions are entirely different. The Employee Handbook permits the changing, modification, supplementing, revision or rescission at any time of all the policies and practices by specified corporate employees. By contrast, there are notice and mutual agreement limitations on modifications to the arbitration agreement in Appendix A. And those changes can only be made to comply with future modifications the law. As is apparent, the modification condition contained in the arbitration agreement in Appendix A is the more specific provision concerning alteration of the parties'

understandings.  Thus, the more specific provision must be enforced.  (Code Civ. Pro., § 1859 ["[I]n the construction of the instrument the intention of the parties, is to be pursued, if possible; and when a general and a particular provision are inconsistent, the latter is paramount to the former."]; Civ. Code, § 3534 ["Particular expressions qualify those which are general."]; *National Ins. Underwriters v. Carter* (1976) 17 Cal.3d 380, 386.)  In terms of the arbitration agreement contained in Appendix A, it is not illusory as plaintiff must concur with any changes in writing.  The arbitration agreement contained in Appendix A grants Tap Worldwide, LLC no unfettered or arbitrary right to modify or terminate the parties' understandings concerning the duty to arbitrate.

We now turn to the issue of the general right to change, modify, supplement, revise or rescind the Employee Handbook.  As noted, in *Sparks*, a different panel of this division held that the right to modify employee handbook language voids any agreement to arbitrate because the contract is illusory.  (*Sparks*, *supra*, 207 Cal.App.4th at p. 1523.)  However, we have reconsidered these views in light of controlling California Supreme Court authority and subsequent Court of Appeal criticisms of *Sparks*.  Our Supreme Court has held that an employer possesses the unilateral right to alter the terms of future employment.  In *Asmus*, *supra*, 23 Cal.4th at pages 15-16, our Supreme Court was called upon to decide whether discontinuance of a policy providing an employee benefit rendered the emolument illusory.  The employee benefit, entitled the Management Employment Security Policy, commenced in 1986 and was as follows:  "'It will be Pacific Bell's policy to offer all management employees who continue to meet our

21

changing business expectations employment security through reassignment to and retraining for other management positions, even if their present jobs are eliminated. [¶] This policy will be maintained so long as there is no change that will materially affect Pacific Bell's business plan achievement."' (*Id.* at p. 7.) In January 1990, the employer notified its managers that marketplace and demographic realities made it unlikely the policy could continue. Nonetheless, it was not until April 1992, more than two years later, that the employer unilaterally discontinued the Management Employment Security Policy. (*Id.* at pp. 7-8.) The Management Employment Security Policy was replaced with a generous severance allowance designed to decrease the number management employees. On appeal, the plaintiffs, 60 former employees, argued that the Management Employment Security Policy would be illusory if the employer could unilaterally modify it. (*Id*. at p. 15.)

Our Supreme Court rejected the plaintiffs' illusory contract contention. Our Supreme Court held a contract that allows the employer to unilaterally terminate the agreement is not illusory if the termination power is subject to limitations of fairness and reasonable notice. Our Supreme Court explained: "Thus, an unqualified right to modify or terminate the contract is not enforceable. But the fact that one party reserves the implied power to terminate or modify a unilateral contract is not fatal to its enforcement, if the exercise of the power is subject to limitations, such as fairness and reasonable notice. ([] 1 Witkin, Summary of Cal. Law [(9th ed. 1987)] Contracts, § 233, p. 241.)" (*Asmus*, *supra*, 23 Cal. 4th at p. 16.) The cited language in the 1987 version of the Witkin

22

text states, "[T]he fact that one party reserves the power to vary [the price or other performance at will] is not fatal, if the exercise of the power is subject to prescribed or implied limitations." (1 Witkin, Summary of Cal. Law, *supra*, Contracts, § 233, p. 241.) Our Supreme Court then explained why the employer's position on the illusory contract dispute was correct: "As [the employer] observes, the [Management Employment Security Policy] was not illusory because plaintiffs obtained the benefits of the policy while it was operable. In other words, [the employer] was obligated to follow it as long as the [Management Employment Security Policy] remained in effect. Although a permanent no-layoff policy would be highly prized in the modern workforce, it does not follow that anything less is without significant value to the employee or is an illusory promise. [Citation.] As long as the [Management Employment Security Policy] remained in force, [the employer] could not treat the contract as illusory by refusing to adhere to its terms; the promise was not optional with the employer and was fully enforceable until terminated or modified. [Citation.]" (*Asmus*, *supra*, 23 Cal. 4th at p. 16.)

The language utilized by our Supreme Court in holding the employer's policy was not an illusory contractual clause finds its basis in part in the cited analysis in the 1987 version of the Witkin text. Prior to *Asmus*, for decades, California appellate courts held that a contract vesting a party with the authority to alter the agreement does not render it illusory. This is because the implied covenant of good faith and fair dealing or generalized fairness concerns limit the contracting party's authority to modify contractual

23

terms.  (*Perdue v. Crocker National Bank* (1985) 38 Cal.3d 913, 923 [a contract with reciprocal promises is not illusory because one party may set the price for services; that power's exercise is subject to fair dealing and good faith restrictions]; *24 Hour Fitness*, *supra*, 66 Cal.App.4th at p. 1214 [employer's president's power to modify the employee handbook did not render the arbitration clause illusory because the modification authority was subject to the good faith and fair dealing implied covenant]; *Third Story Music, Inc. v. Waits* (1995) 41 Cal.App.4th 798, 806, citing 2 Corbin, Contracts (rev. ed. 1995) § 5.28, pp. 149-150 ["'An implied obligation to use good faith is enough to avoid the finding of an illusory promise.'"]; *Vanguard Investments v. Central Cal. Fed. Sav. & Loan Assn.* (1977) 68 Cal.App.3d 950, 958, fn. 8 ["a contracting party's discretionary power to vary the price or other performance does not render the agreement illusory if the party's *actual* exercise of that power is reasonable"]; *Powell v. Central Cal. Fed. Sav. & Loan* (1976) 59 Cal.App.3d 540, 549 [same]; *James G. Freeman & Associates, Inc. v. Tanner* (1976) 56 Cal.App.3d 1, 10 [rejecting an illusoriness contention because, "[W]here the contract specifies performance the fact that one party reserves the power to vary it is not fatal if the exercise of the power is subject to prescribed or implied limitations such as the duty to exercise it in good faith and in accordance with fair dealings."]; *Automatic Vending Co. v. Wisdom* (1960) 182 Cal.App.2th 354, 357-358 [an agreement where one party fixes a commission amount is not illusory because it is subject to the implied good faith and fair dealing covenant and reasonableness

considerations]; see 1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 174, pp. 165-166; *id*. (1984 Supp.) § 174, p. 45.)

Further, after *Asmus*, appellate courts, other than in *Sparks*, have held that a contracting party's power to unilaterally prospectively alter a material contractual term does not render the agreement illusory. And this is because the good faith and fair dealing implied covenant limits unilateral action by a contracting party. (*Serafin*, *supra*, 235 Cal.App.4th at p. 176 [an arbitration agreement is not illusory because of the employer's right to modify its "'policies or practices at any time'" because of the implied covenant]; *Casas v. Carmax Auto Superstores California, LLC* (2014) 224 Cal.App.4th 1233, 1237, quoting *Serpa v. California Surety Investigations, Inc.* (2013) 215 Cal.App.4th 695, 708 (*Serpa*) ["'[T]he implied covenant of good faith and fair dealing limits the employer's authority to unilaterally modify the arbitration agreement and saves that agreement from being illusory and thus unconscionable.'"]; *Peng v. First Republic Bank* (2013) 219 Cal.App.4th 1462, 1473-1474 [an arbitration agreement was not illusory and therefore not substantively unconscionable because the employer's modification right was subject to the implied covenant of good faith and fair dealing]; *Serpa*, *supra*, 215 Cal.App.4th at pp. 707-708 ["the implied covenant of good faith and fair dealing is properly applied in this case and saves this arbitration contract from being illusory"]; *Peleg v. Neiman Marcus Group, Inc.* (2012) 204 Cal.App.4th 1425, 1463-1466 [an agreement was not illusory as to future contractual changes because the employer's modification rights were subject to the implied covenant of good faith and fair dealing].)

Our colleagues in Division Seven of this appellate district have expressly declined to follow the holding in *Sparks* that an employer's right to modify an arbitration agreement renders it illusory. (*Serpa*, *supra*, 215 Cal.App.4th at p. 708, fn. 7.) Instead, our Division Seven colleagues relied on the analysis to the contrary in *24 Hour Fitness*, *supra*, 66 Cal.App.4th at pages 1213-1214. (*Serpa*, *supra*, 215 Cal.App.4th at p. 708, fn. 7.) Also, federal courts have recognized California's rule that a party's modification authority is limited by the implied covenant of good faith and fair dealing. (*Milenbach v. C.I.R.* (9th Cir. 2003) 318 F.3d 924, 930 ["Under California law, an obligation under a contract is not illusory if the obligated party's discretion must be exercised with reasonableness or good faith."]; *Chodos v. West Publishing Co.* (9th Cir. 2002) 292 F.3d 992, 997 ["Thus, a court will not find a contract to be illusory if the implied covenant of good faith and fair dealing can be read to impose an obligation on each party."].)

We have reconsidered the views of the majority in *Sparks* concerning illusory contracts in the employment context. We do so because of: controlling California Supreme Court authority; the decisional authority in effect prior to and after the *Asmus* opinion was filed; and the subsequent express or implied disagreement of the Courts of Appeal with our illusory contract analysis in *Sparks*. Hence, we conclude contrary to *Sparks*, the employer's right to change the Employee Handbook does not render the arbitration agreement illusory. (In defense of the trial court, it materially relied on *Sparks*.)

To sum up, the arbitration agreement's more specific modification provisions control over those in the Employee Handbook. The arbitration agreement's modification provisions are not illusory. Further, the general modification provision in the Employee Handbook is subject to the implied covenant of good faith and fair dealing. The modification provisions in the Employee Handbook are thus not illusory. None of plaintiff's illusory contract contentions permit affirmance of the order under review.

[Part III(C) of this opinion is deleted from publication. See post at page 29 where publication is to resume.]

C. The Arbitration Agreement Is Not Unconscionable

Plaintiff also asserts the arbitration agreement is unconscionable. Code of Civil Procedure section 1281.2, subdivision (b) provides that an arbitration agreement is not enforceable if the court determines grounds exist for revocation of the agreement. Unconscionability is one such ground. (*Pinnacle*, *supra*, 55 Cal.4th at p. 246; *Armendariz*, *supra*, 24 Cal.4th at p. 114.) Our Supreme Court has explained "'[U]nconscionability has both a "procedural" and a "substantive" element,' the former focusing on '"oppression"' or '"surprise"' due to unequal bargaining power, the latter on '"overly harsh"' or '"one-sided"' results. [Citation.]" (*Armendariz*, *supra*, 24 Cal.4th at p. 114; accord, *Pinnacle*, *supra*, 55 Cal.4th at p. 246; see also *Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 911 ["overly harsh," "unduly oppressive," and

"unreasonably favorable" all mean the same thing for substantive unconscionability].) Our Supreme Court later held: "Both procedural unconscionability and substantive unconscionability must be shown, but 'they need not be present in the same degree' and are evaluated on '"a sliding scale."' [Citation.] '[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.' [Citation.]" (*Pinnacle*, *supra*, 55 Cal.4th at p. 247; *Armendariz*, *supra*, 24 Cal.4th at p. 114.)

The arbitration agreement is adhesive. It was imposed on plaintiff as a condition of employment. But there is no evidence as to whether defendant would have been willing to negotiate over the terms of the arbitration agreement. Plaintiff's declaration does not address that issue. In any event, adhesive contracts contain at least some degree of procedural unconscionability. (*Sanchez v. Valencia Holding Co., LLC*, *supra*, 61 Cal.4th at p. 915; *Armendariz*, *supra*, 24 Cal.4th at pp. 114-115.) We now address plaintiff's claims of substantive unconscionability.

Plaintiff asserts that the arbitration agreement is substantively unconscionable because TAP Worldwide, LLC can unilaterally modify the agreement without notice under the handbook. However, as stated previously, the provision permitting an amendment to the arbitration agreement is extremely limited: it can only be effective when the employee has signed the modification in writing; it could only be modified so as to comply with future changes in the law; it applies in a prospective manner only; and it cannot apply to the present dispute as a matter of law. In addition, the modification

28

provision is subject to the implied covenant of good faith and fair dealing.  (*Serafin*, *supra*, 235 Cal.App.4th at p. 176; *Casas*, *supra*, 224 Cal.App.4th at p. 1237; *Peng v. First Republic Bank*, *supra*, 219 Cal.App.4th at pp. 1473-1474; *24 Hour Fitness, Inc.*, *supra*, 66 Cal.App.4th at p. 1214.)  The Court of Appeal has held:  "'[T]he implied covenant of good faith and fair dealing limits the employer's authority to unilaterally modify the arbitration agreement and saves that agreement from being illusory and thus unconscionable.'  [Citation.]"  (*Casas*, *supra*, 224 Cal.App.4th at p. 1237; *Serpa*, *supra*, 215 Cal.App.4th at p. 708.)  Plaintiff makes no other argument concerning substantively unconscionable terms.  We find plaintiff has failed to demonstrate the arbitration agreement was unconscionable.

Plaintiff has not shown grounds to prevent enforcement of the arbitration agreement.  Defendants' motion to compel arbitration should have been granted.  Mr. Rivera and Mr. Dominguez, though they were not parties to the arbitration agreement, are also entitled to compel arbitration as they are employees or agents of TAP Worldwide, LLC.  (*Thomas v. Westlake* (2012) 204 Cal.App.4th 605, 614; *Michaelis v. Schori* (1993) 20 Cal.App.4th 133, 139.)

[The balance of the opinion is to be published.]

## IV.  DISPOSITION

The February 20, 2015 order denying defendants' motion to compel arbitration is reversed.  Upon remittitur issuance, the motion to compel arbitration is to be granted. Defendants, TAP Worldwide, LLC, Eddie Rivera and Alex Dominguez, shall recover their appeal costs from plaintiff, Dwayne Harris.

CERIFIED FOR PARTIAL PUBLICATION

TURNER, P. J.

We concur:

KRIEGLER, J.

KUMAR, J. *

---

\*     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

30