Filed 12/16/25  Rodriguez v. BW Supplies CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ANA RODRIGUEZ,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>BW SUPPLIES, LLC,<br><br>  Defendant and Appellant. | B340191<br><br>(Los Angeles County Super. Ct. No. 23STCV28123) |

APPEAL from an order of the Superior Court of Los Angeles County, Elihu M. Berle, Judge. Affirmed.

Sheppard, Mullin, Richter & Hampton, Richard J. Simmons, and Melanie M. Hamilton for Defendant and Appellant.

James R. Hawkins, Christina M. Lucio, Mitchell J. Murray, and Samantha A. Jones for Plaintiff and Respondent.

\* \* \* \* \* \*

At her onboarding meeting, a newly hired employee signed a document entitled "Assigned Employee Notice & Acknowledgements," containing a single paragraph that obligated the employee to arbitrate all disputes related to her employment. After the employee left her employment and sued the employer, the employer moved to compel arbitration. The trial court denied the motion, finding the arbitration agreement to have a "high level of procedural unconscionability" as well as several substantively unconscionable terms. We affirm that ruling, and also affirm the trial court's decision to invalidate the agreement as a whole rather than sever the invalid terms.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts

#### A. *Employment relationship*

BW Supplies, LLC operates Burke Williams Day Spa (Burke Williams), which offers spa services at a variety of locations. On October 2, 2014, Burke Williams hired Ana Rodriguez (plaintiff) to work as a "spa attendant" at its Torrance, California location for $9 an hour.

#### B. *Plaintiff is onboarded as a new employee*

Plaintiff reported to the Torrance location on October 2, 2014, and attended orientation at 1 p.m. that day to fill out employment paperwork. At that time, Burke Williams relied upon a third-party vendor, Strategic Outsourcing, Inc. (SOI), to "provide payroll, tax remitting, tax reporting, and related services" for Burke Williams' employees.

2

Upon arrival at the orientation, plaintiff was handed a "large stack of onboarding paperwork," including six documents that she was required to review and sign. Plaintiff found the onboarding process to be "rushed and stressful" because she "felt overwhelmed by the volume of paperwork presented and the speed at which [she] was expected to complete it" and felt "pressured to sign all the onboarding paperwork quickly without question."

One of the six documents was entitled "Assigned Employee Notice & Acknowledgements" (the notice).[1] It is one page long and contains nine undesignated paragraphs of text in 8-point font. The notice does not refer to Burke Williams by name (only as "the Company").

-- The third paragraph obligates the employee to "report any illegal discrimination, harassment, retaliation, . . . or error in payment of wages or benefits" and explains that the *failure* to "promptly report a disagreement with the amount of pay" means that Burke Williams "may assume that [the employee] received the correct amount of pay."

---

[1] The full title of the notice states "Section 3 – Assigned Employee Notice & Acknowledgments", but Burke Williams does not explain whether "Section 3" indicates that the notice is part of a larger document that was not provided.

The other five documents were: (1) an offer of employment; (2) a 23-page employee handbook for which plaintiff signed an "acknowledgement of receipt" affirming she was "expected to read, understand, and adhere to company policies and will familiarize [her]self with the material in the handbook"; (3) a "notice to employee" setting plaintiff's pay rate at $9.00 per hour plus the opportunity for tips; (4) an employee information sheet filled out by plaintiff; and (5) a W-4 form completed by plaintiff.

3

--     The fourth paragraph is the arbitration agreement. It is 19 lines long, and does not affirmatively state that it is an arbitration agreement until the fourth line. As pertinent here, the paragraph provides:

--     "I and SOI agree that: Any dispute involving SOI[ or Company] . . . arising from or relating to my employment . . . or termination from employment will be resolved exclusively through binding arbitration before a neutral arbitrator . . ."

--     "Unless prohibited by law, the costs of arbitration will be shared equally by the parties."

--     "In addition: **I AND SOI MUTUALLY WAIVE ANY RIGHT TO A JURY TRIAL,** and I agree to participate in any legal dispute with any Beneficiary only in my individual capacity, not as a member or representative of a class or part of a class action."[2]  (Boldface and all-caps in original.)

---

[2]     In full, the fourth paragraph provides:
"If arbitration agreements are forbidden by law with respect to my employment (for example, if I am employed on a federal contract) the agreement to arbitrate below will not apply, and if I am represented by a union and my collective bargaining agreement (CBA) is inconsistent with my agreement to arbitrate in a given case then the agreement to arbitrate will not apply. The other parts of the agreement below will continue to apply in all cases. I and SOI agree that: Any dispute involving SOI, Company, or any benefit plan, insurer, employee, officer, or director of SOI or Company (all of which are Beneficiaries of [this notice]) arising from or relating to my employment . . . will be resolved exclusively through binding arbitration before a neutral arbitrator in the capital or largest city of the state in which I work or another mutually agreed location (SOI may appear by phone); The Arbitrator may grant the same remedies that would be available in a court of law (and no more), and will use the

Plaintiff found the notice "difficult to read" due to the "very small" and "densely packed" print, and she was not provided an explanation of what arbitration meant.

### C. *Plaintiff leaves Burke Williams*

Plaintiff's employment with Burke Williams ended sometime in November 2022.

## II. Procedural Background

### A. *Plaintiff sues Burke Williams*

On November 16, 2023, plaintiff filed a putative class action complaint against Burke Williams alleging various wage and hour claims.[3]

---

same rules of evidence as a federal court; Unless prohibited by law, costs of arbitration will be shared equally by the parties; If applicable law requires provisions in an arbitration agreement which are different from what is included here, they will be deemed incorporated to the minimum extent required; . . . The arbitrator will render a reasoned written decision. In addition, **I AND SOI MUTUALLY WAIVE ANY RIGHT TO A JURY TRIAL**, and I agree to participate in any legal dispute with any Beneficiary only in my individual capacity, not as a member or representative of a class or part of a class action. . . . My agreements to arbitrate, waive jury trials, and participate only in my individual capacity are contracts under the Federal Arbitration Act and any other laws validating such agreements and waivers. . . . If any part is unenforceable, the rest will still be enforceable."

[3] Specifically, plaintiff alleges causes of action for (1) failure to pay minimum wages, (2) failure to pay overtime owed, (3) failure to provide lawful meal periods, (4) failure to authorize and permit rest periods, (5) failure to timely pay wages during employment, (6) failure to timely pay wages owed upon separation from employment, (7) failure to reimburse necessary

**B.** *Burke Williams moves to compel arbitration*

Burke Williams petitioned to compel arbitration based on the fourth paragraph in the notice.

Plaintiff opposed the petition. Plaintiff conceded that the Federal Arbitration Act applied and that the wage-and-hour dispute at issue fell within the scope of the arbitration agreement, but asserted that the agreement was unconscionable.

Following Burke Williams' reply brief and a hearing, the trial court denied the petition to compel arbitration. In a lengthy ruling from the bench, the court concluded that the arbitration agreement had a "high level of procedural unconscionability." In reaching this conclusion, the court noted that (1) the agreement was an "adhesion contract," (2) plaintiff had been rushed to sign, and had insufficient time to read, the agreement when it was presented as one of a "magnitude [sic] of documents" she was to review in "less than [a] day," and (3) the agreement itself was "unmarked" in a "visually impenetrable single paragraph" "ripe with run-on sentences or missing punctuation" and in typeface so small the court needed to use the "zoom" function on its computer to read it. The court also concluded that the arbitration agreement was substantively unconscionable. In reaching this conclusion, the court cited (1) the agreement's requirement that *both* parties bear the costs of arbitration, which is per se unconscionable in the employment context, (2) the agreement's language that seemingly requires plaintiff—but not Burke Williams—to arbitrate disputes (because the agreement is only

expenses, (8) failure to pay vested vacation wages upon termination of employment, (9) knowing and intentional failure to comply with itemized wage statement provisions, and (10) violation of the Unfair Competition Law.

6

between plaintiff and *SOI*), and (3) the language in the third paragraph of the notice imposing duties on employees—but not Burke Williams—to report discrimination. The court ultimately concluded that the agreement was so "permeated with unconscionability" that it would not attempt to sever any of its invalid provisions because severance "would not be in the interest of justice."

### C. *Burke Williams appeals*

Burke Williams timely appealed.

## DISCUSSION

Burke Williams argues that the trial court erred in declaring the agreement to arbitrate unconscionable.

Despite the strong preference of federal and California law in support of arbitration (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 125 (*OTO*)), an arbitration agreement is invalid if, like any other contract, it is unconscionable. (9 U.S.C. § 2; Code Civ. Proc., § 1281; *OTO*, at p. 125; *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 114 (*Armendariz*); *Doctor's Associates, Inc. v. Casarotto* (1996) 517 U.S. 681, 687.) "A contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party." (*OTO*, at p. 125.) "Unconscionability has both a procedural and a substantive element." (*Ramirez v. Charter Communications, Inc.* (2024) 16 Cal.5th 478, 492 (*Ramirez*).) Those two elements "operate on a 'sliding scale' [citation]: The more of one is shown, the less of the other is required." (*Silva v. Cross Country Healthcare, Inc.* (2025) 111 Cal.App.5th 1311, 1327 (*Silva*); *Ramirez*, at p. 493.) The party resisting enforcement of an agreement to arbitrate has the burden of establishing

7

unconscionability.  (*Ramirez*, at p. 492.)  Once that burden is met, the trial court then must determine whether to "refuse to enforce the contract," "sever any unconscionable clause," or "limit the application of any clause to avoid unconscionable results."  (*Id*. at p. 513; Civ. Code, § 1670.5, subd. (a).)

"Where the facts underlying a determination of unconscionability are uncontroverted, our review is de novo, but where the facts are in dispute, we review the trial court's resolution of those disputes for substantial evidence."  (*Silva, supra*, 111 Cal.App.5th at p. 1327; *Ramirez, supra*, 16 Cal.5th at p. 493.)  We review a trial court's decision not to sever an unconscionable clause in a contract for an abuse of discretion. (*Ramirez*, at p. 513.)

I.    **Unconscionability**

A.    *Procedural unconscionability*

Procedural unconscionability "addresses the circumstances of contract negotiation and formation" and "focus[es]" on (1) "oppression" and (2) "surprise."  (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 246 (*Pinnacle*); *Ramirez, supra*, 16 Cal.5th at p. 492; *OTO, supra*, 8 Cal.5th at p. 125.)

Substantial evidence supports the trial court's finding here that the agreement to arbitrate was oppressive.  It was an adhesion contract because it was presented to plaintiff on a take-it-or-leave-it basis, and because it was a "preemployment arbitration contract[]" involving a lower-wage employee where the "'economic pressure exerted by [an] employer[]'" is "'particularly acute.'"  (*OTO, supra*, 8 Cal.5th at p. 127, quoting *Armendariz, supra*, 24 Cal.4th at p. 115.)  Although the adhesive nature of an arbitration agreement at most creates a low degree

8

of procedural unconscionability (*Ramirez, supra*, 16 Cal.5th at p. 494), the degree of procedural unconscionability was higher in this case by virtue of the absence of time plaintiff was given to evaluate the agreement and the pressure she felt to sign it quickly and without question. (*OTO*, at pp. 126-127 ["circumstances" "relevant to" "oppression" include "the amount of time the party is given to consider the proposed contract" and the "amount and type of pressure exerted on the party to sign the proposed contract"].) Plaintiff's unrebutted declaration establishes the time and other pressure she felt. (See *Fariba v. Dealer Services Corp.* (2009) 178 Cal.App.4th 156, 171 ["the testimony of a single witness, even a party," may be sufficient to satisfy the substantial evidence test].)

Burke Williams resists this conclusion. It urges us to discount plaintiff's testimony, but we may not gainsay the trial court's credibility finding. Burke Williams analogizes this case to *Siglain v. Trader Publishing Co.* (N.D. Cal., July 25, 2008, No. C 08-2108 JL) 2008 U.S. Dist. LEXIS 92095 [nonpub. opn.], but the analogy does not hold because the trial court in that case found that the employer had "acquainted" all employees with the pertinent policies for several hours and had not "threatened" or "bullied" the new employees hired by way of a corporate acquisition into signing any agreements; the evidence here is different. Burke Williams also seems to suggest that any pressure plaintiff felt to sign the agreement is irrelevant because she ultimately signed it, and a person is stuck with the terms of a contract they signed even if they did not read it (*Harris v. TAP Worldwide, LLC* (2016) 248 Cal.App.4th 373, 383); we reject the suggestion that an employee's pressured acquiescence to an arbitration agreement means we must ignore the pressure

9

leading to that acquiescence in evaluating unconscionability, as that would effectively eliminate procedural unconscionability from the analysis of unconscionability.

Substantial evidence also supports the trial court's finding that the agreement to arbitrate was the product of surprise. The arbitration agreement was located in a dense, 19-line paragraph—without a heading and in 8-point font—on a page generically entitled "Assigned Employee Notice & Acknowledgments." (See *OTO*, *supra*, 8 Cal.5th at p. 128 ["surprise" occurs where the arbitration agreement is "written in extremely small font" with "'visually impenetrable'" paragraphs "filled with statutory references and legal jargon"]; *Fisher v. MoneyGram Internat., Inc.* (2021) 66 Cal.App.5th 1084, 1097 [arbitration provision "obscured by placement within a dense block of mostly undifferentiated text that [plaintiff] could not read even with trifocal lenses"].) Moreover, and as discussed more fully below, the language of the agreement itself is confusing—and hence surprising—because it simultaneously seems to bind and not bind Burke Williams, and because its cost-sharing provision is legally invalid but ostensibly inapplicable due to its carveout if the provision is "prohibited by law" (which, as we discuss below, it is). Because a person untrained in the law would likely be confused by these ambiguities, the terms of the agreement also are surprising. (*OTO*, at p. 128 [agreement's terms are a surprise when they require an untrained employee to understand how "'controlling case law'" would invalidate an agreement's provisions].) Burke Williams argues that there is no element of surprise because it was under "no obligation to highlight" the arbitration provision in the notice (*Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 914-915), but

10

the failure to add a heading is far from the only basis for a finding of surprise in this case.

###### B. *Substantive unconscionability*

Substantive unconscionability assesses "the fairness of a contract's terms." (*OTO*, *supra*, 8 Cal.5th at p. 129; *Pinnacle*, *supra*, 55 Cal.4th at p. 246.) A contract's terms are unfair if they are "overly harsh," "unduly oppressive," "unfairly one-sided," or "'so one-sided "as to shock the conscience."'" (*Ramirez*, *supra*, 16 Cal.5th at p. 494; *Pinnacle*, at p. 246.) That is, substantive unconscionability examines whether the contract's terms are "'unreasonably favorable to the more powerful party.'" (*Ramirez*, at p. 494.) Here, the arbitration agreement is substantively unconscionable in two ways.

First and foremost, the agreement obligates plaintiff to share the costs of arbitration with Burke Williams. Our Supreme Court in *Armendariz* declared a cost-sharing provision like this to be unconscionable in the employment context. (*Armendariz*, *supra*, 24 Cal.4th at pp. 110-111.) Burke Williams insists that its clause does not run afoul of *Armendariz*'s prohibition because it qualifies the cost sharing provision as inapplicable when "prohibited by law." We reject this argument. Unconscionability is determined according to the language of the agreement "as written" (*Silva*, *supra*, 111 Cal.App.5th at p. 1328; *Ramirez*, *supra*, 16 Cal.5th at p. 493 [determined at "'the time when the contract [i]s made'"]), and there is no way that a person untrained in the law would understand that the cost-sharing provision in the agreement has no effect by virtue of a then-14-year-old California Supreme Court case referenced nowhere in the agreement. (Accord, *OTO, supra*, 8 Cal.5th at pp. 128-129 [it would "not be evident to anyone without legal knowledge or

11

access to the relevant [legal] authorities" that the plain language of an arbitration agreement was invalidated by the *Armendariz* decision].)

Second, the agreement arguably only requires *plaintiff*—but not Burke Williams—to submit claims to arbitration because the boldfaced language in the agreement provides that "[plaintiff] *and SOI* mutually waive any right to a jury trial." (Italics added.) Such a one-sided waiver of the right to judicial process is clearly unconscionable. (*Armendariz*, *supra*, 24 Cal.4th at p. 117; *Nyulassy v. Lockheed Martin Corp.* (2004) 120 Cal.App.4th 1267, 1281 ["'mutuality'" is the "'paramount consideration'" in assessing substantive unconscionability].) Burke Williams responds that this jury waiver has to be read in conjunction with an earlier, un-boldfaced clause that "[plaintiff] and SOI agree that: Any dispute involving SOI[ or *Company*] . . . will be resolved exclusively through binding arbitration" (italics added), and that this other clause cures any lack of mutuality problems. It is not clear that the clause negates the non-mutual jury waiver because it is expressly only an agreement between plaintiff and SOI—not plaintiff *and Burke Williams*. In any event, the two clauses together are ambiguous and give Burke Williams the opportunity to argue that it is not bound to arbitrate, which, as noted above, is what adds to the procedural unconscionability of the agreement.

C. *Conclusion*

Because substantial evidence supports the trial court's findings of a "high level" of procedural unconscionability as well as its finding of substantive unconscionability of two of the agreement's provisions, the court did not err in concluding that

12

the agreement was unconscionable under the sliding scale test.[4] (Accord, *OTO*, *supra*, 8 Cal.5th at p. 130 ["relatively low degree of substantive unconscionability" "suffice[s]" where there is "substantial procedural unconscionability"].)

## II.  Severance

Once a trial court has determined that a "contract or any clause of [a] contract" is unconscionable, it has discretion to choose between three options:  (1) "refuse to enforce the contract," (2) "sever any unconscionable clause," or (3) "limit the application of any clause to avoid unconscionable results."  (Civ. Code, § 1670.5, subd. (a); *Ramirez*, *supra*, 16 Cal.5th at p. 513.)  Although there is a "'strong legislative and judicial preference . . . to sever the offending [clause] and enforce the balance of the agreement'" (*Ramirez*, at p. 513), "a court must first ask two questions:  (1) *Can* the unconscionable [clause(s)] be easily excised or stricken from the contract (rather than needing to "'reform'" or rewrite the contract "'by augmenting it with additional terms'") [citations]; and, if it is possible to merely excise or strike the offending [clause(s)], (2) *should* the court sever them or limit their application (rather than refuse to enforce the entire contract) [citations]?"  (*Silva*, *supra*, 111 Cal.App.5th at pp. 1330-1331.)

The trial court here did not abuse its discretion in declining to sever the unconscionable clauses from the arbitration provision and instead refusing to enforce it.

---

4      We accordingly have no occasion to consider whether the agreement is substantively unconscionable for the further reason that it imposes obligations to report misconduct to the employer and deems the employee's silence about wage claims to be a concession of no wage law violations.

First, while the arbitration fees clause could be stricken (*Armendariz, supra,* 24 Cal.4th at p. 113 ["absence of specific provisions on arbitration costs" not "grounds for denying the enforcement of an arbitration agreement"]), the two inconsistent clauses regarding whether Burke Williams must arbitrate—the one clause binding only SOI and the other clause purporting to bind Burke Williams—could not simply be stricken without rewriting the arbitration agreement.  (See *Ramirez, supra,* 16 Cal.5th at p. 516 [courts cannot "'rewrite agreements'"]; see also *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 804 [because arbitration waives constitutional right to a jury trial, arbitration agreement must be clear and unambiguous].)

Second, even if certain clauses could be excised, the trial court did not abuse its discretion in declining to sever.  This step asks (1) whether unconscionability "permeate[s]" the whole contract (*Armendariz, supra,* 24 Cal.4th at p. 122), which turns on how many terms are unconscionable and "whether 'the central purpose of the contract is tainted with illegality'" (*Ramirez, supra,* 16 Cal.5th at pp. 515-516); and (2) whether the interests of justice would be served or disserved by allowing the contract to be partly enforced (*id.* at pp. 516-517).  Here, the arbitration agreement's cost-sharing provision is unconscionable and its ambiguous provisions regarding whether Burke Williams must arbitrate are central to—and thus permeate—the agreement as a whole.  Further, the trial court's finding that it would not serve the "interests of justice" to enforce the arbitration agreement was not an abuse of discretion, as the trial court had an ample basis to conclude the agreement's substantive ambiguity and its fine-print burial within the notice as a whole (Civ. Code, § 1641) constituted evidence of a "systematic effort" by Burke Williams to

14

"impose" unreasonable requirements on its employees.  (See *Ramirez*, at pp. 516-517.)

## DISPOSITION

The order is affirmed.  Plaintiff is entitled to her costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, P. J.
HOFFSTADT


We concur:


_____, J.
 MOOR


_____, J.
 KIM (D.)