Filed 9/15/22  Barriga v. U-Haul Co. of Cal. CA1/3
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| RUDOLPH BARRIGA,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>U-HAUL CO. OF CALIFORNIA,<br><br>        Defendant and Appellant. | A163919<br><br>(Alameda County<br>Super. Ct. No. HG21102237) |

U-Haul challenges the trial court's denial of its motion to compel arbitration of claims its former employee, Rudolph Barriga, brought against it for discrimination and wrongful termination.  We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

U-Haul employed Barriga as a facility maintenance technician from 2004 until 2019, when U-Haul fired Barriga.  Barriga subsequently filed a complaint against U-Haul for discrimination based on race, color, ancestry, and national origin in violation of the Fair Employment and Housing Act (Gov't Code, § 12940 et seq.) (FEHA); failure to prevent discrimination; and wrongful termination in violation of public policy.

U-Haul moved to compel arbitration of Barriga's claims on the basis that Barriga had expressly agreed to arbitrate those claims by virtue of electronically signing agreements to arbitrate in 2007 and 2013.  It also moved to compel arbitration on the basis that Barriga had impliedly agreed

1

to arbitration by continuing to work for U-Haul after learning about U-Haul's arbitration policy in those same agreements. The declaration of Mandy Flanagan, a director in U-Haul International, Inc.'s (UHI) human resources department, attached January 2007 and January 2013 arbitration agreements that were electronically signed in Barriga's name. In opposition, Barriga explicitly averred he never executed the arbitration agreements and presented evidence that other employees could have affixed his electronic signature to the agreements. In response, U-Haul argued the authenticity of the signatures and filed a supplemental declaration from Flanagan, in which she discussed her familiarity with the database used by U-Haul employees to electronically execute arbitration agreements.

After a hearing on the motion to compel arbitration, the trial court found U-Haul had not met its burden of establishing the existence of a valid arbitration agreement and denied the motion. U-Haul appealed. (Code Civ. Proc., § 1294, subd. (a).)

## DISCUSSION

As detailed below, we conclude the trial court did not err in finding that U-Haul failed to satisfy its burden of proving the existence of an express or implied-in-fact agreement to arbitrate. (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413 ["Because the existence of the agreement is a statutory prerequisite to granting the petition, the petitioner bears the burden of proving its existence by a preponderance of the evidence."]; see also Code Civ. Proc., § 1281.2.)

### A. Express Agreement to Arbitrate

U-Haul argues that Barriga agreed to arbitrate his claims by affixing electronic signatures to the 2007 and 2013 arbitration agreements. We conclude the trial court's finding that U-Haul did not satisfy its burden to

2

prove an express agreement to arbitrate was not erroneous as a matter of law.

## 1. Governing Law and Standard of Review

A party moving to compel arbitration meets its initial burden by presenting a signed arbitration agreement but, where the validity of the signature is challenged, the petitioner must "establish by a preponderance of the evidence that the signature was authentic." (*Espejo v. Southern California Permanente Medical Group* (2016) 246 Cal.App.4th 1047, 1060 (*Espejo*).)

To authenticate an electronic signature, the petitioner must show the electronic signature "was the act of the person." (Civ. Code, § 1633.9, subd. (a).) "The act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable." (*Id.*, § 1633.9, subd. (a).) For example, a party may present evidence that the signatory was required to use a unique, private login and password to affix the electronic signature, along with evidence detailing the procedures the person had to follow to electronically sign the document and the accompanying security precautions. (*Espejo*, *supra*, 246 Cal.App.4th at p. 1062.)

U-Haul argues, incorrectly, that Barriga had to prove the electronic signatures were not his as he bore the burden of proof on issues relating to forgery. But once Barriga declared he did not sign the agreements, U-Haul had the burden of establishing by a preponderance of the evidence that the signatures were authentic. (See *Espejo*, *supra*, 246 Cal.App.4th at p. 1060.) The cases U-Haul cites as support for its argument are inapposite as they do not challenge the fundamental premise that the moving party bears the

3

burden of establishing the existence of an agreement to arbitrate. (See *id.* at p. 1057; *Mt. Holyoke Homes, L.P. v. Jeffer Mangels Butler & Mitchell, LLP* (2013) 219 Cal.App.4th 1299, 1308.)

Where, as here, the trial court's decision "is based on the court's finding that [the party seeking arbitration] failed to carry its burden of proof, the question for the reviewing court is whether that finding is erroneous as a matter of law." (*Fabian v. Renovate America, Inc.* (2019) 42 Cal.App.5th 1062, 1066.) " ' "Specifically, the question becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' " ' " (*Id.* at p. 1067.)

" ' "[W]here . . . the judgment is against the party who has the burden of proof, it is almost impossible for [that party] to prevail on appeal by arguing the evidence compels a judgment in [that party's] favor. That is because unless the trial court makes specific findings of fact in favor of the losing [party], we presume the trial court found the [party's] evidence lacks sufficient weight and credibility to carry the burden of proof. [Citations.] We have no power on appeal to judge the credibility of witnesses or to reweigh the evidence." ' " (*Fabian v. Renovate America, Inc.*, *supra*, 42 Cal.App.5th at p. 1067.) " 'The appellate court cannot substitute its factual determinations for those of the trial court; it must view all factual matters most favorably to the prevailing party and in support of the judgment.' " (*Ibid.*)

## 2. Barriga's Evidence

The below testimony is found in Barriga's declaration submitted to the trial court in opposition to the motion to compel arbitration. In sum, Barriga expressly denied signing any arbitration agreement and testified that other

U-Haul employees had the means and opportunity to execute the agreements in his name.

At one point in Barriga's employment (he does not specify a date), he was prompted to electronically sign an arbitration agreement while using a shared computer terminal at a U-Haul facility. Barriga refused to do so. He was aware of employment arbitration agreements and would not sign the U-Haul agreement based on advice he had previously received from an attorney representing another individual in an employment dispute to never sign an arbitration agreement as a condition of employment.

Barriga was unable to exit out of the electronic arbitration agreement without signing it. He therefore walked away and left the unsigned arbitration agreement open on the shared computer. Before anybody else could use the computer, that person would have had to type in Barriga's social security number and affix his electronic signature on the arbitration agreement. A copy of Barriga's social security number was kept on site, and several managers had access to it. On multiple occasions, he witnessed managers taking safety training tests for other employees using U-Haul's electronic records system. In fact, he learned, after logging into the U-Haul computer system, that someone had completed safety training courses under his name.

After U-Haul terminated his employment, Barriga asked for his personnel file and U-Haul produced what it represented to be Barriga's entire personnel file. This file did *not* include the arbitration agreement that Barriga purportedly signed in 2007; it only included the 2013 arbitration agreement. Barriga denied ever signing either agreement. Barriga also pointed out that the fonts of the electronic signatures in the documents

attached to Flanagan's declaration differed from their counterparts in the personnel file U-Haul provided Barriga.

### 3. Flanagan's Supplemental Declaration

U-Haul's evidence regarding the authenticity of the electronic signatures consisted of Flanagan's supplemental declaration.[1] Flanagan began working for UHI in 2012, and worked in its human resources department starting in 2019. Her job duties required her to develop and maintain knowledge of UHI's human resources technology systems, and she had the knowledge and training required to analyze data related to electronic human resources documents.

Flanagan stated she knew "for a fact" that an employee had to use their System Member Identification Number (SMID) and a "unique confidential and secure" password "chosen by the employee . . ." to log in to UHI's human resources platform and review and electronically execute human resources documents such as the arbitration agreements. Based on the data she reviewed, and which she claimed could not be altered, someone using Barriga's SMID and password logged on to the platform in 2007 and again in 2013, and electronically signed the arbitration agreements. This data also showed that someone using Barriga's SMID and password electronically signed a harassment policy and an electronic communication policy approximately five minutes after someone had signed the 2013 arbitration agreement in Barriga's name.

---

[1] U-Haul filed two prior Flanagan declarations. However, U-Haul does not challenge the trial court's findings that those two declarations were insufficient to satisfy U-Haul's burden, focusing instead on Flanagan's supplemental declaration. Our review is limited to those issues that have been adequately raised and supported in U-Haul's brief. (*Lee v. Kim* (2019) 41 Cal.App.5th 705, 721.)

The trial court found Flanagan's declaration inadequate to sustain U-Haul's burden as Flanagan did not have sufficient personal knowledge to authenticate the 2007 and 2013 arbitration agreements.

### 4. Application

The trial court undertook its duties to weigh the evidence and concluded U-Haul did not satisfy its burden to show the electronic signatures "w[ere] the act of" Barriga.[2]  It is not our role to reweigh the evidence or second guess the trial court's credibility determinations.

U-Haul's evidence is not uncontradicted or of " ' " 'such a character and weight as to leave no room for a judicial determination that it was insufficient' " ' " to establish the authenticity of the electronic signatures. (*Fabian v. Renovate America, Inc.*, *supra*, 42 Cal.App.5th at p. 1067.)  It does not support a finding as a matter of law that Barriga was required to use a unique, private login and password to affix his signature on the arbitration agreements such that he is the only person who could have signed the agreements.  Significantly, Flanagan's supplemental declaration is unclear as to whether an employee must enter his or her SMID and password to log in to the UHI platform and affix an electronic signature to documents, or if the

---

[2] We reject Barriga's contention that U-Haul waived any argument regarding the existence of an agreement to arbitrate in 2007 by failing to present adequate argument on that issue in its opening brief.  Contrary to Barriga's assertion, U-Haul's arguments in its opening brief concern both the 2007 and 2013 arbitration agreements.  We also reject Barriga's assertion that U-Haul waived any argument regarding Flanagan's supplemental declaration because U-Haul filed the declaration after it had filed its reply.  U-Haul argued at the hearing on its motion that this declaration was sufficient to authenticate the electronic signatures, yet Barriga never objected to the declaration.  "[A]n appellate court will ordinarily not consider procedural defects or erroneous rulings where an objection could have been, but was not raised below." (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 826.)

SMID and password is only needed to log in to the platform. Barriga's evidence, on the other hand, was that someone else affixed his signature to one of the arbitration agreements after he logged into the shared computer terminal, and that other individuals had access to the information necessary to complete and/or alter his personnel documents.

Moreover, the trial court did not abuse its discretion in concluding that Flanagan lacked personal knowledge of the security features used by U-Haul to ensure that Barriga's electronic signature could not be entered on the arbitration agreements by other individuals. (See *Alvarado v. Anderson* (1959) 175 Cal.App.2d 166, 179 ["Whether foundational evidence is of such substantiality as will support a finding of a foundational fact is a matter which lies within the legal discretion of the trial judge and his decision will not be overruled on appeal unless it constitutes an abuse of that discretion."]; see also Evid. Code, §§ 403, subd. (a)(2), 702, subd. (a).) She did not explain, for example, how she "kn[e]w for a fact" that the password used by an employee to login into the UHI platform was confidential and was one of the employee's choosing, and that U-Haul or UHI used this security measure in 2007 and 2013, before she even worked for UHI's human resources department. As a result, U-Haul failed to show that Barriga's login information was known only by him.

*Espejo*, the case U-Haul relies on, is distinguishable. In *Espejo*, the appellate court reversed the trial court's denial of the employer's petition to compel arbitration of employment claims. (*Espejo, supra*, 246 Cal.App.4th at pp. 1050, 1057.) Before the trial court, the employer argued that the employee had signed an arbitration provision as part of his offer of employment. (*Id*. at p. 1051.) The employer presented detailed evidence describing each step an applicant would have to take to place his name on the

8

signature line and the security precautions that would preclude transmission and use of an applicant's e-signature by someone else. Specifically, the employer's systems consultant described how the employer provided a unique username and password directly and orally to the applicant over the phone, how the employer's online system would prompt the applicant to re-set the password to one of his choosing once he logged into the system using this username and password, and how the applicant would only have access to the arbitration agreement once he re-set his password. (*Id.* at p. 1053.) On appeal, the reviewing court concluded that those details established that the electronic signature on the arbitration agreement was "the act of" the employee. (*Id.* at p. 1062.)

Such details are absent here. Moreover, the employee in *Espejo* provided no contrary showing, stating only that he did not recall signing the arbitration agreement. (*Espejo, supra*, 246 Cal.App.4th at p. 1054.) Barriga went much farther, as shown by the evidence already described and his unequivocal denial that he ever signed any U-Haul arbitration agreements based both upon his specific recollection of refusing to sign an agreement and his general opposition to the signing of any such agreement.

U-Haul points out that Barriga did not contest that he signed the harassment policy and the electronic communication policy, and that he failed to explain how he signed those two policies approximately five minutes after the 2013 arbitration agreement was signed. But U-Haul has the burden to present evidence showing the existence of an arbitration agreement between Barriga and U-Haul, and it did not present evidence supporting a finding as a matter of law that Barriga had to have signed the arbitration agreement if he was also the individual who signed the other two policies five minutes later. There is also nothing in the record beyond the use of Barriga's

9

log-in information – information apparently not limited to him – indicating it was Barriga who signed the policies rather than the individual who signed the arbitration agreement after Barriga walked away from the computer terminal.

Finally, U-Haul contends the trial court erroneously applied a heightened standard of proof that required U-Haul to submit evidence of someone physically seeing Barriga sign the 2013 arbitration agreement, citing to a single comment its counsel made at the hearing on the motion and ignoring the other arguments and evidence presented to the court. Based on the evidence before it, the trial court expressly found that Flanagan lacked not only knowledge of the circumstances surrounding Barriga's execution of the agreements, but also of the security measures U-Haul used to ensure the authenticity of electronic signatures.

We conclude the trial court did not err as a matter of law in finding no express agreement to arbitrate between U-Haul and Barriga. U-Haul's complaint that the trial court ignored public policy in making its findings is of no consequence as the public policy in favor of arbitration " ' "does not extend to those who are not parties to an arbitration agreement, and a party cannot be compelled to arbitrate a dispute that he has not agreed to resolve by arbitration. [Citation.]" ' " (*Westra v. Marcus & Millichap Real Estate Investment Brokerage Co., Inc.* (2005) 129 Cal.App.4th 759, 763.)

### B. Implied-in-Fact Agreement

U-Haul next argues that the arbitration policies set forth in the 2007 and/or 2013 arbitration agreement became an implied-in-fact arbitration agreement with Barriga by virtue of his receipt of those policies and subsequent, continued employment. As California law does not allow an

10

employer to effectuate a unilateral policy change if it is ambiguous, this claim fails.

## 1. Governing Law and Standard of Review

"California law permits employers to implement policies that may become unilateral implied-in-fact contracts when [at-will] employees accept them by continuing their employment." (*Asmus v. Pacific Bell* (2000) 23 Cal.4th 1, 11.) [3] Accordingly, an employee's acceptance of an agreement to arbitrate may be implied-in-fact where the employee's continued employment constitutes his or her acceptance of an agreement proposed by the employer. (*Craig v. Brown & Root, Inc.* (2000) 84 Cal.App.4th 416, 420; see *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236 (*Pinnacle*).)

Courts look to the language of the employer's arbitration policy to determine whether it constitutes a unilateral policy change. In *Harris v. TAP Worldwide, LLC* (2016) 248 Cal.App.4th 373 (*Harris*), the plaintiff employee received an employee handbook stating arbitration was " 'an absolute prerequisite' " to " 'hiring by, and continued employment with,' " the employer. (*Id.* at p. 377.) It further stated: " 'If for any reason, an applicant fails to execute the Agreement to Arbitrate yet begins employment, that employee will be deemed to have consented to the Agreement to Arbitrate by

---

[3] Civil Code section 1621 defines an implied contract: "An implied contract is one, the existence and terms of which are manifested by conduct." "Although an implied in fact contract may be inferred from the 'conduct, situation or mutual relations of the parties, the very heart of this kind of agreement is an intent to promise.' " (*Friedman v. Friedman* (1993) 20 Cal.App.4th 876, 887.) Like an express contract, an implied-in-fact contract " ' "must be founded upon an ascertained agreement of the parties to perform it, the substantial difference between the two being the mere mode of proof by which they are to be respectively established." ' " (*Ibid.*)

11

virtue of receipt of this Handbook.' " (*Id.* at p. 378.) Because the handbook "expressly addressed the effect of an employee's failure to execute the attached arbitration agreement[,]" the employee "was deemed to have consented to arbitrate by virtue of acceptance of the [handbook]" and his commencement of employment. (*Id.* at p. 384.)

In contrast, the court in *Mitri v. Arnel Management Co.* (2007) 157 Cal.App.4th 1164 (*Mitri*) found no implied-in-fact agreement to arbitrate where the employee handbook stated that " '[a]ny dispute arising out of employment with the Company, as allowed by law, will be settled by binding arbitration.' " (*Id.* at pp. 1167, 1170–1171.) This was because the arbitration provision also provided that " '[a]s a condition of employment, all employees are required to sign an arbitration agreement,' " and the plaintiff employee never signed the arbitration provision. (*Ibid.*) The provision further stated, " '[e]mployees will be provided a copy of their signed arbitration agreement . . . .' " (*Id.* at p. 1171.) Applying general principles of contract interpretation, the court concluded the language indicated the employer intended to enter a bilateral arbitration contract with employees by having employees sign a separate arbitration agreement. (*Id.* at p. 1171.)

Here, Barriga contends the arbitration provision is ambiguous regarding whether he was required to sign the arbitration provision to effectuate a change in policy. Whether a written instrument is ambiguous – that is, reasonably susceptible to more than one interpretation – is a question of law subject to de novo review. (*Smith v. Adventist Health System / West* (2010) 182 Cal.App.4th 729, 754–755.) If the instrument is ambiguous, the court may admit extrinsic evidence to aid its interpretation. (*WYDA Associates v. Merner* (1996) 42 Cal.App.4th 1702, 1710.) Where, as here, the

extrinsic evidence is not conflicting, resolution of the ambiguity is a question of law.  (See *Winet v. Price* (1992) 4 Cal.App.4th 1159, 1166.)

## 1. Factual and Procedural Background

U-Haul presented evidence to the trial court that someone affixed Barriga's electronic signature to arbitration agreements in 2007 and in 2013. U-Haul argues on appeal that Barriga admitted to reading at least one of those agreements, and that it is likely the agreement Barriga read was the 2013 agreement.  Barriga also indicates that the arbitration agreement he was prompted to sign was the 2013 arbitration agreement.

The three-page arbitration agreement Barriga purportedly received in 2013 is entitled "Notice to Employees About U-Haul's Employment Dispute Resolution Policy" (Notice).  It states that the employment dispute resolution policy (EDR) "APPLIES TO YOU" and "will govern all existing or future disputes between you and U-Haul Co. of California . . . ."  It further states that "Your decision to accept employment or continue employment with U-Haul Co. of California constitutes your agreement to be bound by the EDR," and it describes the EDR procedures and the arbitration process.  This language immediately precedes, "Likewise, U-Haul agrees to be bound by the EDR.  This mutual obligation to arbitrate claims means that both you and U-Haul are bound to use the EDR as the only means of resolving any employment-related disputes."

The first page of the Notice directs the employee to a link if the employee wants to review the rules governing the procedures to be used in arbitration "prior to signing the Arbitration Agreement . . . ."  Near the end of the Notice is a separate section entitled "U-Haul Employee Agreement to Arbitrate" (arbitration agreement).  This section states, among other things, "both U-Haul and I agree to forego any right we each may have had to a jury

13

trial on issues covered by the EDR . . . ." At the end of this section is a signature block for the employee.

The 2007 Notice is almost identical to the 2013 Notice, the only relevant difference being that the 2007 Notice does not contain language advising employees to review the arbitration rules before signing the arbitration agreement.

In its petition to compel arbitration, U-Haul argued that Barriga assented to the EDR by continuing his employment after receiving the Notices. Barriga did not address the existence of an implied-in-fact agreement to arbitrate in his opposition, though he argued at the hearing on the motion that the arbitration provisions required his signature to effectuate any agreement to arbitrate.

The trial court did not expressly address whether Barriga assented to an arbitration provision by continuing his employment with U-Haul. It noted only that the "agreement provides on page 1 that if Plaintiff signed the agreement and continued working for U-Haul, he effectively agreed that the arbitration agreement applied to his FEHA claims." Because the trial court denied U-Haul's motion to compel arbitration on the basis that U-Haul failed to carry its burden to prove Barriga entered into the agreement, we infer that the trial court implicitly found no implied-in-fact agreement to arbitrate.[4]

_____

[4] U-Haul contends the doctrine of implied findings does not apply as this was not a "trial" under Code of Civil Procedure section 632. The doctrine of implied findings requires the appellate court to infer that the trial court made implied factual findings favorable to the prevailing party on all issues necessary to support the judgment, including for omitted or ambiguously resolved issues. (See *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133–1134.) Because U-Haul filed a motion to compel arbitration under Code of Civil Procedure section 1281 et seq., the doctrine of implied findings is applicable pursuant to Code of Civil Procedure section 1291. (See *Carbajal v.*

14

## 2. Application

U-Haul focuses on Barriga's admission that he read at least one of the Notices at issue, the one he refused to sign and instead walked away from. Both parties hypothesize in their briefs that Barriga received the 2013 Notice, and it is undisputed that Barriga thereafter continued his employment with U-Haul for several more years.[5]  Regardless of which Notice Barriga received, we conclude that both the 2007 and 2013 Notices are ambiguous and therefore could not constitute a unilateral policy change.

Although the Notices state that continued employment constitutes the employee's agreement to be bound by the EDR, both Notices clearly convey a mutuality of promises rather than a mere unilateral implementation of company policy.  (*Bleecher v. Conte* (1981) 29 Cal.3d 345, 350 ["A bilateral contract is one in which there are mutual promises given in consideration of each other."].)  In particular, the arbitration agreement included in each Notice provides, "in exchange for my agreement to arbitrate, U-Haul also agrees to submit all claims and disputes it may have with me to final and

---

*CWPSC, Inc.* (2016) 245 Cal.App.4th 227, 237.)  Therefore, where noted, we infer that the trial court made implied factual findings favorable to Barriga.

[5] Barriga contends there is a reasonable inference that he read only the title of the Notice and maybe the first sentence but not the language stating that his continued employment constitutes his agreement to be bound by the EDR, and that this inference shows U-Haul did not notify him that his continued employment constitutes acceptance of the EDR.  This argument lacks merit.  The record does not demonstrate that Barriga was prevented from reading or understanding the Notice.  Rather, Barriga's own evidence shows that he refused to sign the arbitration agreement.  "The fact that defendant either chose not to read or take the time to understand [the agreement to arbitrate] is legally irrelevant" as to the issue of whether an implied-in-fact agreement to arbitrate exists.  (*Harris, supra*, 248 Cal.App.4th at p. 383; see also *Pinnacle, supra*, 55 Cal.4th at p. 236 ["An arbitration clause within a contract may be binding on a party even if the party never actually read the clause."].)

binding arbitration." As in *Mitri*, the signature block in the arbitration agreements and the language in the 2013 Notice advising employees to review the arbitration rules before signing the agreement further underline that U-Haul intended to enter into a bilateral arbitration agreement with Barriga. That language and the separate arbitration agreements would be surplusage if Barriga's continued employment alone constituted acceptance of the EDR policy. (See Civ. Code, § 1641 ["The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other"].)

The Notices therefore support an interpretation that Barriga's signature was required to effectuate an arbitration agreement. And any ambiguity as to the requirement of an employee signature is to be construed against U-Haul. (*Sandquist v. Lebo Automotive, Inc.* (2016) 1 Cal.5th 233, 247–248 [ambiguity in a form arbitration agreement prepared entirely by the employer would be construed in favor of the employee]; see also *Esparza v. Sand & Sea, Inc.* (2016) 2 Cal.App.5th 781, 789.)

The limited extrinsic evidence on this issue is not in conflict and reinforces our construction of the Notices. Flanagan stated that U-Haul required all employees "to indicate their assent to the Arbitration Agreement by affixing his or her electronic signature to the document." This is consistent with Barriga's testimony that his district-level manager told him he "needed to sign an arbitration agreement." Because "[m]utual assent is determined by the reasonable meaning of the parties' words and acts" (*Esparza v. Sand & Sea, Inc.*, *supra*, 2 Cal.App.5th at p. 789), this evidence, coupled with the ambiguities in the Notices, indicates U-Haul intended to enter into a bilateral agreement to arbitrate by having Barriga sign the agreement.

The cases relied on by U-Haul, *Harris* and *Diaz v. Sohnen Enterprises* (2019) 34 Cal.App.5th 126, are distinguishable. The arbitration provision in *Harris*, as discussed above, expressly addressed the effect of the employee's failure to execute the agreement by providing that receipt of the provision and continued employment constituted acceptance of the agreement if he did not sign the arbitration provision. (*Harris, supra*, 248 Cal.App.4th at p. 377.) No similar language appears in the Notices here. In *Diaz v. Sohnen Enterprises*, the plaintiff received notice at an in-person meeting that the company was adopting a new dispute resolution policy requiring arbitration of all claims. (*Diaz v. Sohnen Enterprises, supra*, 34 Cal.App.5th at p. 128.) At the meeting, the employer's chief operating officer told all employees present, including the plaintiff, that continued employment by an employee who refused to sign the agreement would itself constitute acceptance of the policy. (*Ibid.*) Here, there is no evidence that Barriga was informed that, if he failed to sign the arbitration agreements, his receipt of the Notices and his continued employment would constitute his acceptance to be bound by the EDR.

Accordingly, the trial court did not err in implicitly finding no implied-in-fact agreement to arbitrate.

2. **Evidentiary Hearing**

U-Haul seeks reversal because the trial court did not allow limited discovery and did not hold an evidentiary hearing. We do not find this argument persuasive.

At the hearing on its motion to compel arbitration, U-Haul stated, without more, that if the court had any "hesitation" about the authenticity of the electronic signatures it would be appropriate to stay the case to allow for limited discovery and an evidentiary hearing. The trial court implicitly

17

denied U-Haul's request for an evidentiary hearing when it denied the motion to compel arbitration without granting a continuance or holding an evidentiary hearing.[6]

U-Haul has forfeited this issue. It did not request an evidentiary hearing until the hearing on its motion.[7] Even then, it raised the issue in a cursory manner without cogent argument or citation to legal authority. Barriga had no opportunity to brief this issue, and the argument U-Haul now raises on appeal was not properly before the trial court. "Appellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider." (*JRS Products, Inc. v. Matsushita Electric Corp. of America* (2004) 115 Cal.App.4th 168, 178.)

Even if there were no forfeiture of the issue, we find no abuse of discretion. Ordinarily, on a motion to compel arbitration, facts are to be proven by affidavit or declaration and documentary evidence, "with oral testimony taken only in the court's discretion." (*Rosenthal v. Great Western Fin. Securities Corp., supra*, 14 Cal.4th at pp. 413–414.) "There is simply no authority for the proposition that a trial court necessarily abuses its

---

[6] U-Haul seems to suggest the trial court abused its discretion by failing to exercise its discretion. It cites *Ashburn v. AIG Financial Advisors, Inc.* (2015) 234 Cal.App.4th 79 (*Ashburn*) for this proposition. But, as discussed below, *Ashburn* is distinguishable, and the record does not "clearly show[]" that the court failed to exercise its discretion. (See *Fassberg Construction Co. v. Housing Authority of City of Los Angeles* (2007) 152 Cal.App.4th 720, 768.)

[7] At oral argument, U-Haul contended that it requested an evidentiary hearing in its reply brief filed with the trial court. This representation was inaccurate as U-Haul requested only limited depositions and an opportunity to file supplemental briefing based on that evidence. Nowhere in its reply brief did U-Haul request an evidentiary hearing.

discretion, in a motion proceeding, by resolving evidentiary conflicts without hearing live testimony." (*Id*. at p. 414.)

However, it may be an abuse of discretion to deny an evidentiary hearing where there are "sharply conflicting" versions of the facts and credibility is at issue. (*Rosenthal v. Great Western Fin. Securities Corp., supra*, 14 Cal.4th at p. 414.) Here, Flanagan's declarations do not "sharply conflict" with the factual account presented by Barriga, as they allow for the possibility that others could have affixed Barriga's electronic signature to the arbitration agreements. U-Haul does not purport that any additional or different evidence would have been presented at the evidentiary hearing, and it also fails to explain why additional testimony was necessary to resolve credibility issues.

This case is markedly different from *Ashburn, supra*, 234 Cal.App.4th 79, relied upon by U-Haul. There, despite starkly differing and significant evidence regarding the purported arbitration agreements, the trial court granted the petition to compel arbitration without holding an evidentiary hearing. (*Id*. at pp. 86–89, 98.) On appeal, the court reversed, stating, "In light of the record here, we do not understand how the trial court could have made such a finding without an evidentiary hearing." (*Id*. at p. 95.) The court reasoned that "there was significant dispute about what appellants signed, how they came to sign it, and what they signed said—not to mention extensive evidence of the significant relationship [one defendant] had with each appellant before they signed anything," and "the parties do not even agree as to what the pertinent documents are even called." (*Id*. at p. 98.) Here, there are no similar factual disputes.

Finally, U-Haul failed to present any argument or legal authority in support of its contention that the trial court abused its discretion by refusing

to allow limited discovery.  U-Haul also made no showing to the trial court that it needed to conduct discovery on matters pertinent to the authenticity of the electronic signatures.  Thus, U-Haul has not established that it has been unfairly denied discovery.  (See *Rosenthal v. Great Western Fin. Securities Corp.*, *supra*, 14 Cal.4th at pp. 412–413.)

In sum, U-Haul has forfeited this issue.  Were it not forfeited, we would find the trial court did not err in declining to allow limited discovery and to hold an evidentiary hearing.

## DISPOSITION

The order denying the motion to compel arbitration is affirmed.  Respondent Rudolph Barriga shall recover costs on appeal.

_____

Petrou, J.

WE CONCUR:


_____

Fujisaki, Acting P.J.


_____

Rodríguez, J.

A163919/*Barriga v. U-Haul Co. of California*

21