Filed 2/27/24  Gonzalez v. Anthem CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| APRIL J. GONZALEZ,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ANTHEM, INC., et al.,<br><br>    Defendants and Appellants. | B323876<br><br>(Los Angeles County<br>Super. Ct. No. 22STCV13837) |

APPEAL from an order of the Superior Court of Los Angeles County and ORIGINAL PROCEEDING; petition for writ of mandate.  Yolanda Orozco, Judge.  Order affirmed and petition denied.

Constangy, Brooks, Smith & Prophete, Steven B. Katz, Thy B. Bui, Lisa Yumi Mitchell and Deepa Kollipara for Defendants and Appellants.

Stonebrook Law, Joseph Tojarieh; Rager & Yoon Employment Law, Jeffrey Rager, James Y. Yoon; Gusdorff Law and Janet R. Gusdorff for Plaintiff and Respondent.

_____

This is an appeal from orders denying an initial motion and a renewed motion to compel arbitration of April J. Gonzalez's employment law claims. The trial court denied both motions because Anthem, Inc. (Anthem or the company), The Anthem Companies, Inc., and Patricia Amoroso (collectively, appellants) failed to prove the existence of an agreement to arbitrate.

This appeal requires us to apply contract principles of implied consent and incorporation by reference that were forged over time in a paper-based world. That world is diminishing. The arbitration policy here did not live in a paper world, but, instead, appeared in one of several links on the company's internal website.

Appellants argue that prior to and during Gonzalez's tenure at the company, Anthem provided Gonzalez with notice of an arbitration policy that was accessible on the company's intranet site. Appellants do not claim Gonzalez signed an arbitration agreement or that Anthem gave Gonzalez a standalone, printed copy of the arbitration policy. Rather, they claim (1) Anthem's initial offer letter to Gonzalez and (2) certain form notices referencing the intranet site that Anthem had sent to Gonzalez during her employment provided her with sufficient notice of the arbitration policy accessible on the site.

Although the trial court's ruling denying appellants' renewed motion to compel arbitration is not an appealable order, we exercise our discretion to treat the appeal of that order as a writ petition and accept the parties' invitation to review the evidentiary record for both motions to determine whether an agreement to arbitrate exists. On the merits, we conclude the trial court did not err in denying either motion.

2

The offer letter Anthem sent to Gonzalez does not bind her to the arbitration policy because the letter expressly states that the offer was contingent on Gonzalez having signed the document, and appellants concede Gonzalez never did so.

We also conclude that Anthem did not provide Gonzalez with sufficient notice of the arbitration policy on the two iterations of the intranet site that Anthem maintained during Gonzalez's tenure. Specifically, the first iteration of the site did not alert Gonzalez that the human resources policies found in links on that site created binding legal obligations, and indeed disclaimed that those policies created contractual obligations. Appellants also fail to demonstrate that the form notices Anthem sent to Gonzalez validly incorporated by reference the arbitration policy accessible on the second iteration of the company's intranet site, given that neither the form notices nor the site itself called Gonzalez's attention to the arbitration policy. We reject the remainder of appellants' challenges to the court's orders. We thus affirm the order denying appellants' initial motion and deny the petition seeking review of the order denying their renewed motion.

### FACTUAL AND PROCEDURAL BACKGROUND[1]

We summarize only those facts relevant to our review.

---

[1] We derive our Factual and Procedural Background in part from admissions made by the parties in their appellate briefing, assertions Gonzalez makes in her respondent's brief that appellants do not dispute in their reply, and undisputed aspects of the trial court's rulings. (See *Artal v. Allen* (2003) 111 Cal.App.4th 273, 275, fn. 2 (*Artal*) [" '[A] reviewing court may make use of statements [in briefs and argument] . . . as admissions against the party [advancing them].' "]; *Association*

3

Gonzalez began working for Anthem as a customer service associate in May 2008.[2]  Her employment ended in December 2021.  Appellants claim that "The Anthem Companies, Inc. is a wholly owned subsidiary of Anthem . . . and . . . paymaster entity that process[es] payroll and maintains payroll records for various Anthem . . . employees," and that Amoroso was one of Gonzalez's supervisors.

Gonzalez commenced the instant action by filing suit against appellants and Cheryle Anaya.[3]  In her complaint, Gonzalez pleads the following 12 causes of action:  (1) violation of pregnancy disability leave (PDL); (2) retaliation under the Fair Employment and Housing Act (FEHA); (3) retaliation in violation of PDL; (4) disability discrimination—failure to make reasonable accommodation in violation of FEHA; (5) failure to engage in the interactive process in violation of FEHA; (6) pregnancy discrimination in violation of FEHA; (7) disability discrimination (FEHA)—wrongful termination; (8) retaliation in violation of the California Family Rights Act; (9) wrongful termination in violation of public policy; (10) failure to prevent and/or remedy

---

*for Los Angeles Deputy Sheriffs v. County of Los Angeles* (2023) 94 Cal.App.5th 764, 773–774 (*Association for Los Angeles Deputy Sheriffs*) [holding that "by failing to dispute" an assertion made by respondents, "appellants [had] tacitly concede[d] that point"]; *Baxter v. State Teachers' Retirement System* (2017) 18 Cal.App.5th 340, 349, fn. 2 [utilizing the summary of facts provided in the trial court's ruling].)

[2]  The name of the entity that hired Gonzalez was "WellPoint, Inc.," which was later changed to Anthem.  For the sake of clarity, we attribute WellPoint's actions to Anthem.

[3]  Anaya is not a party to this appeal.

discrimination and retaliation (FEHA); (11) defamation per se/per quod; and (12) intentional infliction of emotional distress. Among other things, Gonzalez avers that Anthem terminated her in December 2021 "under the false pretext that Gonzalez had been absent from work . . . without any contact with her employer," despite the fact that she had "dutifully kept in contact with [Anthem] and requested medical leave" in connection with her pregnancy.

Appellants moved to compel arbitration, arguing that during Gonzalez's tenure, Anthem had provided Gonzalez with notice of the company's arbitration policy and information on how to access that policy.[4] According to the trial court, appellants did not "dispute [Gonzalez's] assertion there is no signed arbitration agreement or that [Gonzalez] was never presented with a standalone arbitration agreement." The trial court denied the motion because appellants had "not met [their] burden of proving the existence of a valid Arbitration Agreement."

Pursuant to Code of Civil Procedure section 1008, subdivision (b), appellants filed a renewed motion to compel arbitration. Based on the court's findings that appellants' renewed motion was timely and that they had "provided a satisfactory explanation as to why the previously filed motion failed to present . . . alleged new or different evidence," the court decided to "consider[ ] the newly submitted declarations to determine if [appellants had] proven by a preponderance of the evidence[ ] the existence of a valid contract binding

---

[4] In our Discussion, parts B–C, *post*, we detail appellants' assertions that Anthem provided Gonzalez with sufficient notice of the company's arbitration policy.

5

[Gonzalez] . . . ."[5]  "Having reviewed [appellants'] newly submitted evidence, the Court [could not] find that [appellants] proved by a preponderance of the evidence that [Gonzalez] agreed to be bound by any arbitration agreement."

On September 29, 2022, appellants filed a notice of appeal seeking review of the trial court's orders denying their initial and renewed motions to compel arbitration.

## APPLICABLE LAW REGARDING ENFORCEMENT OF ARBITRATION AGREEMENTS AND STANDARDS OF REVIEW

" 'In ruling on a motion to compel arbitration, the trial court shall order parties to arbitrate "if it determines that an agreement to arbitrate the controversy exists . . . ."  [Citation.] "[T]he party seeking arbitration bears the burden of proving the existence of an arbitration agreement by a preponderance of the evidence, and the party opposing arbitration bears the burden of proving by a preponderance of the evidence any defense . . . ." [Citation.]' "  (*Western Bagel Co., Inc. v. Superior Court* (2021) 66 Cal.App.5th 649, 662.)

" ' "[G]eneral principles of contract law determine whether the parties have entered a binding agreement to arbitrate." ' [Citation.]  'Mutual assent, or consent, of the parties "is essential to the existence of a contract" [citations], and "[c]onsent is not mutual, unless the parties all agree upon the same thing in the same sense" [citation].  "Mutual assent is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their

---

[5] Neither side contests the trial court's decision to reach the merits of appellants' renewed motion.

words and acts, and not their unexpressed intentions or understandings." ' [Citations.]" (*B.D. v. Blizzard Entertainment, Inc.* (2022) 76 Cal.App.5th 931, 943 (*Blizzard Entertainment*).) Put differently, " 'notice—actual, inquiry, or constructive—is the touchstone for assent to a contract[.]' " (*Id.* at p. 944.)

"These consent principles apply 'with equal force to arbitration provisions contained in contracts purportedly formed over the Internet.' [Citations.] 'While Internet commerce has exposed courts to many new situations, it has not fundamentally changed the requirement that " '[m]utual manifestation of assent, whether by written or spoken word or by conduct, is the touchstone of contract.' " ' [Citation.]"[6] (*Blizzard Entertainment*, *supra*, 76 Cal.App.5th at p. 943.) " '[I]n order to establish mutual assent for the valid formation of an internet contract, [the offeror] must first establish the contractual terms were presented to the [offeree] in a manner that made it apparent the [offeree] was assenting to those very terms . . . .' [Citation.]" (See *id.* at p. 944.)

" 'Under traditional contract principles, where there is no dispute as to the material facts, "the existence of a contract is a question [of law] for the court to decide." [Citation.] . . . .' [Citations.]" (*Blizzard Entertainment*, *supra*, 76 Cal.App.5th at p. 949.) Such "pure questions of law . . . are subject to de novo review." (See *Shewry v. Begil* (2005) 128 Cal.App.4th 639, 642.) Although Gonzalez insists that "the parties dispute . . . the facts," neither side contests the contents of the written and electronic materials that appellants claim give rise to an agreement to

---

[6] The trial court found that Anthem's intranet site was a "website that contained" the company's policies. Appellants do not challenge that finding.

arbitrate. The de novo standard thus governs our review. (See *Blizzard Entertainment*, at p. 949 [" 'Where . . . the trial court denies a petition to compel arbitration based on the threshold issue of the existence of a contract, and the evidence of the alleged contract formation consists primarily of undisputed screenshots of the website at issue, our review is de novo.' "].)

" ' "A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness." [Citation.]' [Citation.] Thus, ' " 'it is the appellant's responsibility to affirmatively demonstrate error' " ' by ' " 'supply[ing] the reviewing court with some cogent argument supported by legal analysis and citation to the record.' " [Citation.]' [Citations.]" (*Association for Los Angeles Deputy Sheriffs*, *supra*, 94 Cal.App.5th at pp. 776–777.) The presumption of correctness applies " '[e]ven when our review . . . "is de novo," ' " meaning that although we are " 'not bound by, or . . . required to show any deference to, the trial court's conclusion[s]' " in such cases, the scope of our review " ' "is limited to issues which have been adequately raised and supported in [the appellant's opening] brief. [Citations.] . . . ." ' [Citation.]" (See *Golden Door Properties, LLC v. County of San Diego* (2020) 50 Cal.App.5th 467, 554–555.)

## DISCUSSION

Appellants contend the arbitration policy in effect when Gonzalez left the company (the 2016 revision) provided in relevant part: " 'By entering into the employment relationship, the company and its associates subject to the policy consent to resolution by binding arbitration of all claims arising out of or

8

related to the termination of the relationship.' "[7]  Appellants contend that prior to and throughout Gonzalez's employment, Anthem repeatedly provided her notice that she could access the arbitration policy via the company's intranet site.  Appellants further argue that by working for Anthem after receiving notice of the policy, Gonzalez impliedly agreed to it.  "[Appellants] do[ ] not dispute that Ms. Gonzalez . . . never accessed the arbitration policy[ ] and believed that she was not bound by it."  Nevertheless, appellants contend, "That Ms. Gonzalez did not bother to read the arbitration policy—or subjectively (and secretly) believed she was not bound by it—makes no difference."  (See also *Blizzard Entertainment*, *supra*, 76 Cal.App.5th at p. 943 ["If an offeree objectively manifests assent to an agreement, the offeree cannot avoid a specific provision of that agreement on the ground the offeree did not actually read it."].)

As we explain in Discussion, parts B–D, *post*, appellants have failed to show that Gonzalez impliedly agreed to Anthem's arbitration policy.  Before we address the merits of appellants' arguments, we address immediately below the scope of our review because the denial of the renewed motion to compel arbitration is not an appealable order.

---

[7]  Appellants concede that "[p]rior versions [of the policy] had the same language."  For that reason, we do not differentiate among the various iterations of the arbitration policy in effect during Gonzalez's tenure with Anthem.

9

## A. We Exercise Our Discretion To Treat Appellants' Appeal of the September 29, 2022 Order as a Writ Petition

In their notice of appeal, appellants sought review of the (1) August 1, 2022 order denying their initial motion to compel arbitration,[8] and (2) September 29, 2022 order denying their renewed motion to compel arbitration.  The August 1, 2022 order is appealable.  (Code Civ. Proc., § 1294, subd. (a) ["An aggrieved party may appeal from:  [¶] . . . An order . . . denying a petition to compel arbitration."].)  The September 29, 2022 order is not.[9] (*Westmoreland v. Kindercare Education LLC* (2023) 90 Cal.App.5th 967, 973 (*Westmoreland*) [" '[A]n order denying a renewed motion,' including a renewed motion to compel arbitration, 'is not appealable.' "].)

Appellants correctly note, " '[W]hile the denial of a motion for reconsideration is usually not an appealable order, the denial is reviewable if the request for reconsideration is made from an appealable order.' [Citation.]" (Quoting *George v. Shams-Shirazi* (2020) 45 Cal.App.5th 134, 138.)  Appellants do not explain how this legal principle supports appealability of the order denying the *renewed* motion to compel arbitration (made pursuant to

---

[8] Although appellants mistakenly asserted in their notice of appeal that the trial court issued this order on August *3*, 2022, we construe the notice to reference the August *1*, 2022 order. (Cal. Rules of Court, rule 8.100(a)(2) ["The notice of appeal must be liberally construed."].)

[9] Although Gonzalez does not contest our jurisdiction to review the September 29, 2022 order, " 'we are dutybound to consider [that issue] on our own motion.' [Citation.]" (See *Nguyen v. Calhoun* (2003) 105 Cal.App.4th 428, 436.)

Code Civ. Proc., § 1008, subd. (b)), which is not a motion for reconsideration (see *id*., subd. (a)).

Be that as it may, we have discretion to review the September 29, 2022 order by treating appellants' appeal from that order as a petition for writ of mandate. (See *Westmoreland*, *supra*, 90 Cal.App.5th at p. 970.) Here, appellants timely appealed the August 1, 2022 order denying their motion to compel arbitration, the trial court exercised its discretion to reach the merits of their renewed motion, and Gonzalez does not claim prejudice were we to review that order. Additionally, were we to affirm the order denying appellants' initial motion to compel but decline to review the order denying their renewed motion, appellants may have to wait until final judgment before they could obtain review of that second ruling. (See Code Civ. Proc., § 906 ["[T]he reviewing court may review . . . any intermediate ruling . . . which . . . necessarily affects the judgment or order appealed from or which substantially affects the rights of a party . . . ."].) Under these circumstances, " 'refusing [to] review [the September 29, 2022 order] at this point . . . would result in a significant waste of time and judicial resources.' [Citation.]" (See *Westmoreland*, at p. 970.)

We thus exercise our discretion to hear the appeal of the order denying appellants' renewed motion as a writ petition. We also accept the parties' invitation to utilize the evidentiary record for both motions in assessing whether Gonzalez agreed to Anthem's arbitration policy. (See *Artal*, *supra*, 111 Cal.App.4th at p. 275, fn. 2 [holding that we may accept the parties' concessions].)

11

## B.    Appellants Do Not Establish that Anthem's Offer Letter Evidences an Agreement to Arbitrate

Shortly before Gonzalez began her employment in May 2008, Anthem sent her a two-page offer letter.  Among other things, the offer letter identified Gonzalez's start date and hourly pay and informed her, "[A]ll . . . associates are employed on an 'at-will' basis."  The top of the second page of the letter provides: "This offer is contingent upon receipt of the signed copy of this letter, a satisfactory background investigation, and proof of your employment eligibility in the United States."  The next sentence states:  "Finally, as an associate of [Anthem], you will be subject to the Company's binding arbitration policy, as more fully described on my HR, HR Policies, Arbitration."  The end of the letter contains the words "Offer acceptance," followed by a line designated for the recipient's signature.

The trial court observed, and appellants do not dispute, that they had "not established that [Anthem] provided [Gonzalez] with a stand-alone copy of the arbitration agreement . . . ."  Nor do appellants claim that at the time Gonzalez received the offer letter, she had access to the arbitration policy via the intranet site referenced in the correspondence, to wit, "MyHR."  Further, appellants concede that "Gonzalez never signed the offer letter . . . ."

Appellants claim the absence of Gonzalez's signature on the offer letter is of no consequence because she allegedly "accept[ed] the offer," including the arbitration policy, by "go[ing] to work for the company . . . for 13 years."  Put differently, working for Anthem constituted "Gonzalez's assent" to the offer letter's terms, including the arbitration policy.  We disagree.

12

Civil Code section 1582 provides: "If a proposal prescribes any conditions concerning the communication of its acceptance, the proposer is not bound unless they are conformed to; but in other cases any reasonable and usual mode may be adopted." (Civ. Code, § 1582.) Here, the offer letter states, "This offer is contingent upon receipt of the *signed copy* of this letter . . . ." (Italics added.) This text did not allow Gonzalez to manifest her acceptance to the terms of the letter by working for Anthem without signing the correspondence. Accordingly, the terms of the offer letter demonstrate that Gonzalez did not consent to the arbitration policy referenced in the letter. (Cf. *Gorlach v. Sports Club Co.* (2012) 209 Cal.App.4th 1497, 1507–1511 [rejecting an employer's argument that "an implied-in-fact agreement to arbitrate . . . was created when [an employee] remained in [the employer's] employ after learning that signing the arbitration agreement was a condition of employment," and reasoning that the employee had not signed the agreement and that an employee "handbook told employees that they must sign the arbitration agreement, [thereby] implying that it was not effective until (and unless) they did so"].)

Appellants argue that Division Five's decision in *Harris v. TAP Worldwide, LLC* (2016) 248 Cal.App.4th 373 (*Harris*), supports their position that Gonzalez agreed to the arbitration policy by working for the company after receiving the offer letter. The *Harris* court held that the employee assented to an arbitration agreement attached to an employee handbook by (a) signing a form acknowledging receipt of the handbook, and then (b) beginning employment. (See *Harris*, at pp. 381–385.) The court rejected the employee's argument that he was not bound by the arbitration agreement because he did not sign it.

13

(See *id.* at pp. 383–384.) The court reasoned the employee had "unequivocally accepted the offer of employment by commencing to work . . . for which he was paid." (See *id.* at p. 384.) The handbook stated, " 'If, for any reason, an applicant fails to execute the Agreement to Arbitrate yet begins employment, that employee will be deemed to have consented to the Agreement to Arbitrate by virtue of receipt of this Handbook.' " (See *id.* at p. 383.)

In contrast, Anthem's letter provided the opposite; it stated the company's offer to Gonzalez was "contingent" upon her signing the letter. The handbook in *Harris* expressly authorized implied acceptance to the arbitration agreement (see *Harris, supra,* 248 Cal.App.4th at p. 383); Gonzalez's offer letter did not. Accordingly, *Harris* is inapposite. (See *id.* at pp. 383–385 [holding that "an agreement to arbitrate may be" " 'implied-in-fact where . . . the employee's continued employment constitutes [his or] her acceptance of an agreement proposed by [his or] her employer[,]' " and the handbook in *Harris* had "expressly addresse[d] the situation where an employee fails to execute the arbitration agreement and accepts employment"].)

Lastly, appellants suggest that the offer letter did not require Gonzalez's signature " 'to be binding' " because she had " 'fully performed' " her employment contract with Anthem by staying with the company for 13 years. This assertion is puzzling because Anthem offered her "at-will" employment and not employment for a specified term. Because appellants do not elaborate on this point, we do not address it further. (See *Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277 ["We may and do 'disregard conclusory arguments that . . . fail to

14

disclose the reasoning by which the appellant reached the conclusions he wants us to adopt.' "].)

In sum, appellants fail to demonstrate that Gonzalez agreed to Anthem's arbitration policy by working for the company after she received the offer letter.

## C. Appellants Fail To Demonstrate that Gonzalez Manifested Her Assent to the Arbitration Policy Accessible on Anthem's Intranet Site

Before 2017, Anthem provided employees access to all of the company's human resources policies, including its arbitration policy, through its intranet portal called "MyHR." Anthem thereafter provided employees access to the arbitration policy through a new intranet site, "Anthem Pulse." During the trial court proceedings, appellants introduced into evidence screenshots from MyHR and Anthem Pulse to show that Gonzalez had electronic access to the company's arbitration policy.

Appellants argue Gonzalez is bound by the arbitration policy accessible on MyHR and Anthem Pulse because Anthem periodically provided her with constructive notice of the policy and, by continuing to work for the company after receiving such notice, she impliedly manifested her assent to the terms of the policy.[10]

___

[10] Appellants do not clarify whether, were we to reject their contention that she did not have to sign the offer letter to manifest her assent to the terms of that correspondence (see Discussion, part B, *ante*), the letter nonetheless provided adequate notice to Gonzalez that she was bound by the arbitration policy found on Anthem's intranet page. Appellants thus waive any such argument. (See *Cahill v. San Diego Gas &*

15

In support of their constructive notice argument, appellants maintain that from 2009 to 2020, Gonzalez electronically signed annual certification acknowledgments upon completing an ethics and compliance training course.[11]  Those compliance certifications provided in pertinent part:  "Compliance with Anthem policies is a condition of employment and Anthem may take corrective action, including termination, for violations of: [¶] . . . Anthem policies and procedures [¶] . . . [¶]  I have access to Human Resources policies via the Anthem intranet site and understand I am responsible for reading and abiding by the policies and procedures listed in them and as amended from time to time."[12]

Further, appellants claim that "in May 2011, October 2013, and May, June and August 2017, Ms. Gonzale[z] received written 'corrective action' forms for various reasons, each of which 'acknowledge,' above Ms. Gonzalez's signature, that she 'received . . . electronic access via the company intranet [to] . . . the Anthem . . . HR Policies' " and " 'agree[d] to abide by the policies contained within . . . .' "  (Fn. omitted.)

---

*Electric Co.* (2011) 194 Cal.App.4th 939, 956 (*Cahill*) [" 'We are not bound to develop appellants' argument for them.  [Citation.] The absence of cogent legal arguments or citation to authority allows this court to treat the contention as waived.' "].)

[11]  As a shorthand, we refer to Gonzalez's signed certifications as "compliance certifications."

[12]  The parties agree that "[t]hese certifications changed little from year to year and, for the purposes of this appeal, were substantively identical during each year Gonzalez worked for Anthem."

For the reasons set forth below, we reject appellants' contention that Anthem provided Gonzalez with adequate notice that by continuing to work for the company, she would be bound by its arbitration policy. Specifically, certain aspects of MyHR strongly suggested that the human resources policies accessible on the site did not constitute contractual terms to which Gonzalez would be legally bound. (See Discussion, part C.1, *post*.) Furthermore, although Anthem Pulse omitted certain language from MyHR that had disclaimed any legally binding effect of the company's human resources policies, Anthem nonetheless failed to provide Gonzalez with sufficient notice of the arbitration policy. (See Discussion, part C.2, *post*.) Accordingly, appellants do not establish the existence of an agreement to arbitrate.

### 1. *Gonzalez did not have adequate notice that she was bound by the arbitration policy found on MyHR*

Upon reviewing evidence that appellants introduced concerning Anthem's MyHR intranet site, the trial court stated, "[T]he Court does not find that the arbitration policy on the 'MyHR' intranet was noticeable and distinguishable as a binding agreement to arbitrate sufficient to put [Gonzalez] on notice as to the existence of the agreement." We agree.

During the proceedings below, an Anthem human resources official attested that once an employee "was on the 'MyHR' home screen, [the employee] was required to click on the menu tree under 'HR Policies' to access all of" them. The link to "Anthem's arbitration policy was the third policy listed [under the HR Policies menu tree] and 'no additional scrolling [was] necessary to locate it.' "

A screenshot for the MyHR home screen shows that "Arbitration" is one of 16 policies listed under the menu tree

17

titled "HR Policies."  The trial court found, and our review of the screenshot confirms, that "the section titled 'Arbitration' is not distinguishable from other HR designated categories, such as 'Attendance' and 'Bereavement.'"  The court further remarked, "[Appellants] fail[ ] to explain how employees were supposed to distinguish between HR policies that were merely informational such as for attendance or [bereavement], and those which pertained to substantive employment rights, such as an agreement to arbitrate."

In addition, the first paragraph at the top of the MyHR screenshot states:  "The HR policies on this intranet site supersede and replace any inconsistent policies or practices and replace any past handbook or HR policies.  *These policies are not intended to be a contract (express or implied), nor are they intended to otherwise create any legally enforceable obligations on the part of the company or its associates.*  As a growing and changing company, our HR policies and procedures are continually evaluated and may be amended, modified, or terminated at any time, without notice."  (Italics added.)  This disclaimer further supports the trial court's conclusion that Anthem did not clearly communicate to its employees that the human resources policies accessible on MyHR created contractual obligations.

Furthermore, the compliance certifications and corrective action forms did not specifically identify the arbitration policy found on MyHR, nor did they differentiate that policy from others on the site that the trial court characterized as "merely informational" in nature.  (See Discussion, part C, *ante* [the beginning of this part reproduced the pertinent text from the compliance certifications and corrective action forms].)

18

We acknowledge that the compliance certifications Gonzalez signed stated that she had "access to Human Resources policies via the Anthem intranet site and underst[ood she was] responsible for reading and abiding by the policies and procedures listed in them and as amended from time to time." (See Discussion, part C, *ante*.) Appellants seem to be contending that this language provided Gonzalez with sufficient notice that she needed to wade through each of the numerous hyperlinks on the site to determine (1) which human resources policies applied to her, and (2) of the applicable policies, which ones were simply informational and which policies instead contradicted the home screen's disclaimer by imposing legal obligations upon her. Appellants provide no analysis or citation to authority to support such an expansive extrapolation from Gonzalez's signing of the compliance certifications. Appellants have thus waived that contention. (See *Cahill, supra,* 194 Cal.App.4th at p. 956.)

We further note that appellants' argument flies in the face of the bedrock common law principle that " ' "[m]utual assent is determined" ' " based on " ' "the *reasonable* meaning of [the parties'] words and acts . . . ." ' [Citations.]" (See *Blizzard Entertainment, supra,* 76 Cal.App.5th at p. 943, italics added; see also *id.* at pp. 934–935, 942 [indicating that assent to an online arbitration provision hinges on whether the clause was "sufficiently conspicuous to establish an agreement to arbitrate"]; cf. *Doe v. Massage Envy Franchising, LLC* (2022) 87 Cal.App.5th 23, 34 (*Doe*) [holding that " ' " 'consumers cannot be expected to ferret out hyperlinks to terms and conditions to which they have no reason to suspect they will be bound' " ' "].)

We thus conclude that Anthem did not present the arbitration policy found on the MyHR intranet site to Gonzalez

19

"in a manner that made it apparent [she] was assenting to" the policy's terms by continuing to work for the company. (See *Blizzard Entertainment*, *supra*, 76 Cal.App.5th at p. 944.) Rather, the record indicates the arbitration policy was an " 'inconspicuous contractual provision[ ] of which [Gonzalez] was unaware, contained [on a site] whose contractual nature [was] not obvious[,]' " meaning that she was "not bound" by the policy. (See *Doe*, *supra*, 87 Cal.App.5th at pp. 30–31; cf. *Esparza v. Sand & Sea, Inc.* (2016) 2 Cal.App.5th 781, 787–791 [holding that an employee was not bound by an arbitration provision included in an employee handbook in part because a welcome letter at the beginning of the handbook "declared that the handbook did not 'create any legally enforceable obligations,' " and a policy acknowledgment the employee signed "suggest[ed the handbook was] merely informational"].)

2. *Appellants fail to show the compliance certifications and corrective action forms incorporated by reference the arbitration policy on Anthem Pulse*

Although Anthem Pulse did not contain the language from MyHR stating that the policies on the site had no legally binding effect, the trial court ruled that Anthem's compliance certifications did not provide Gonzalez with adequate notice of the arbitration policy on Anthem Pulse. Specifically, the court concluded appellants failed to demonstrate that the electronically accessible arbitration policy was incorporated by reference into the compliance certifications. As explained below, we agree with the trial court on this point, and we also find that the arbitration policy was not incorporated by reference into the corrective action forms Gonzalez received during her tenure.

" 'The general rule is that the terms of an extrinsic document may be incorporated by reference in a contract so long as (1) the reference is clear and unequivocal, (2) the reference is called to the attention of the other party and he [or she] consents thereto, and (3) the terms of the incorporated document are known or easily available to the contracting parties.' [Citations.]" (*Blizzard Entertainment*, *supra*, 76 Cal.App.5th at p. 952.) Under this doctrine, " '[t]he contract need not recite that it "incorporates" another document, so long as it "guide[s] the reader to the incorporated document." ' " (See *ibid.*)

Courts utilize the incorporation by reference doctrine to determine whether a document provides notice that is "sufficiently conspicuous" to bind a party to terms found on an electronic platform. (See *Blizzard Entertainment*, *supra*, 76 Cal.App.5th at pp. 934–936, 951–954.) We acknowledge, however, that applying the incorporation by reference doctrine in this context is more challenging than in other contexts. " 'In the world of paper contracting, the outward manifestation of assent to the *same thing* by both parties is often readily established by the offeree's receipt of the physical contract.' [Citation.]" (*Id.* at pp. 943–944.) Conversely, in determining whether an offeree has assented to terms available electronically, "courts are actually undertaking 'a fact-intensive inquiry' " in determining whether the terms are "sufficiently conspicuous to establish an agreement to arbitrate." (See *id.* at pp. 942, 946–947.) Courts are often tasked with assessing "the size, color, contrast, and location of any text notices; the obviousness of any hyperlinks; and overall screen 'clutter.' [Citation.]" (See *id.* at p. 947.)

As noted earlier in this part, the compliance certifications and corrective action forms did not specifically reference

21

Anthem's arbitration policy, but instead mentioned that the company's human resources policies were available on Anthem's intranet site.  The trial court observed that the compliance certifications made "specific references to other important Anthem policies," including policies concerning confidentiality, employees' privacy, conflicts of interest, and inventions or discoveries made by an employee while employed at Anthem, but not to the arbitration policy.

We conclude that the compliance certifications' and corrective action forms' general references to human resources policies on Anthem Pulse fall short of satisfying the incorporation by reference doctrine because the site did not call Gonzalez's attention to, or otherwise guide, Gonzalez to the arbitration policy.

The trial court explained that to access the arbitration policy on Anthem Pulse, an employee would first need to "click[ ] on the 'Human Resources' page and then click[ ] on the header 'HR Policies.' "  The screenshot for Anthem Pulse shows that several categories of policies thereafter appear on the left hand side of the screen, to wit (listed from top to bottom):  "My Attendance & Work Time," "My Job," "My Workplace," and "Short Term."  The court noted that the " 'My Attendance & Work Time' category[ ] . . . presumably lists other policies about said category only if an employee clicks on the category to expand it."[13]  The court further observed that if "the second category

_____

[13]  As we noted in Discussion, part C.1, *ante*, the trial court distinguished Anthem's attendance policies from the arbitration policy by characterizing the former as "merely informational" and the latter as "pertain[ing] to substantive employment rights . . . ." Appellants do not dispute this finding.

listed[,] . . . 'My Job[,]' . . . is selected/expanded, the first [policy] listed is 'Arbitration.' " The screenshot reveals that "Arbitration" is one of 15 policies listed under the "My Job" category; the other policies include "Immigration" and "Job Related Licensure and Certifications." Gonzalez points out that yet a further click is required to read the full text of the arbitration policy because only "[p]ortions of each policy . . . appear on the main part of the screen after 'My Job' is clicked on," and "these [policy] excerpts can be expanded if the user clicks on 'Read More.' "[14]

These undisputed facts support the trial court's finding that "employees had to navigate two to three clicks to access the arbitration policy" on Anthem Pulse. Appellants do not contest the court's conclusions that the arbitration policy "was hidden within Anthem's various HR policies in an intranet or website that contained numerous other policies and that Anthem made no effort to bring the arbitration policy to the attention of its employees, including [Gonzalez]." Furthermore, as we have explained above, absent from appellants' briefing is any support for their contention that Gonzalez was somehow obligated to click through all of the hyperlinks on Anthem's intranet site to determine which human resources policies (1) applied to her and (2) were not merely informational but instead affected her legal rights.[15] (See Discussion, part C.1, *ante.*)

---

[14] Appellants tacitly agree with these assertions by failing to dispute them in their reply brief. (See *Association for Los Angeles Deputy Sheriffs*, *supra*, 94 Cal.App.5th at pp. 773–774.)

[15] In the factual and procedural history section of their opening brief—but nowhere else—appellants direct our attention to the following language from a page on the Anthem Pulse site: "You are responsible for knowing and complying with all

For all these reasons, we conclude that the compliance certifications and corrective action forms did not incorporate by reference the arbitration policy found on Anthem Pulse. (Cf. *Doe*, *supra*, 87 Cal.App.5th at pp. 26, 32, 34 [holding that a patron of a massage parlor was not bound by an arbitration agreement in part because the parlor's electronic "check-in process [did not] call any attention" to the document containing the agreement].)

In arriving at this conclusion, we acknowledge the federal district court ruling in *Pulido v. Caremore Health Plan, Inc.* (C.D. Cal., May 12, 2020, No. CV 20-02730-AB (AFMx)) [2020 WL 5077353] (*Pulido*), to the contrary. There, the district court held that Anthem's compliance certifications incorporated by reference the arbitration policy found on Anthem's intranet site. (See *id.* at pp. *1–2, *4–5.) We are not bound by *Pulido*,[16] and we respectfully disagree with its terse analysis.

Although *Pulido* found that the compliance certifications incorporated by reference the arbitration policy found on MyHR, its analysis appears to be based on evidence relating to only

company policies, using good judgment, acting with integrity, and obeying all laws." Appellants do not argue that this text notified Gonzalez that she was responsible for clicking through all the hyperlinks corresponding to human resources policies on the site to determine which ones affected her legal rights. Accordingly, we do not further address this text from the Anthem Pulse site. (See *Cahill*, *supra*, 194 Cal.App.4th at p. 956; *Browne v. County of Tehama* (2013) 213 Cal.App.4th 704, 725–726 (*Browne*) [holding that an appellant forfeited a contention by failing to "present[ it] in the argument section of either the opening or reply brief"].)

[16] (See *Sanchez v. Bezos* (2022) 80 Cal.App.5th 750, 769 ["We are not bound by federal district court decisions . . . ."].)

24

Anthem Pulse. In particular, *Pulido* observed, "Defendants provide[d] evidence that the Arbitration Policy was made available to Plaintiff via the 'MyHR' *and* 'Anthem Pulse' intranet page as the *first* policy listed under the 'My Job' category of Anthem's HR policies." (*Pulido, supra*, [2020 WL 5077353, at p. *4], italics added.) Our analysis in Discussion, part C.1, *ante*, shows that "arbitration" was the *third* link listed under the "HR Policies" menu tree on the MyHR home screen. *Pulido* also did not reference the express disclaimer in the MyHR intranet site that the policies contained on the site did not create contractual obligations. (See *Pulido, supra*, [2020 WL 5077353, at pp. *1–4]; Discussion, part C.1, *ante*.)

In addition, although *Pulido* found that the arbitration policy was " 'easily accessible' " to a former Anthem employee via the intranet site, the court did not assess whether the company had guided or directed the former employee to the arbitration policy available on Anthem Pulse. (See *Pulido, supra*, [2020 WL 5077353, at pp. *1–2, *4–5].) Yet, as we explained earlier in this part, the incorporation-by-reference analysis turns on whether Anthem had guided or directed Gonzalez to the arbitration policy found on the site.

In sum, appellants have failed to establish that Anthem provided Gonzalez with sufficient notice of the arbitration policy on the Anthem Pulse intranet site.

## D. We Reject Appellants' Remaining Challenges to the Trial Court's Rulings

Appellants argue the trial court erroneously treated Anthem's arbitration policy as a proposal to enter into a "bilateral" contract, rather than a "unilateral contract to which

25

Ms. Gonzalez assented by continuing to work for Anthem."[17]  To support this contention, appellants maintain that the trial court relied upon certain authorities "pertain[ing] to bilateral contracts," including Civil Code section 1565, subdivision (3), which provides in relevant part:  "The consent of the parties to a contract must be [¶] . . . [¶] . . . [c]ommunicated by each to the other."  (Civ. Code, § 1565, subd. (3).)

Insofar as appellants are claiming the trial court should have concluded that Gonzalez did not need to sign the offer letter to be bound by the arbitration policy referenced in the correspondence (i.e., that the letter was a proposal to enter into a *unilateral* contract that Gonzalez had accepted by beginning her employment for Anthem without signing the correspondence), we have rejected that argument.  (See Discussion, part B, *ante*.)  Furthermore, our analysis in Discussion, part C, *ante*, demonstrates that the trial court did indeed consider the precise question appellants insist the court "should have asked"— "whether Ms. Gonzalez was put on notice (actual or constructive) that continued employment would be acceptance of the arbitration policy."  Whether, in the course of resolving that question, the court cited any potentially inapplicable legal

_____

    **17** A "unilateral contract" is one in which the offeror provides a "promise . . . in consideration of the [offeree's] act or forbearance," whereas "an offer . . . to enter into a bilateral contract . . . may be accepted by a promise" to perform "rather than . . . actual performance on the part of the offeree."  (See 14 Cal.Jur.3d (2016) Contracts, §§ 19–20.)

26

authorities is beside the point.[18] (See *Estate of Sapp* (2019) 36 Cal.App.5th 86, 104 [" 'If the *decision* of a lower court is correct on any theory of law applicable to the case, the judgment or order will be affirmed regardless of the correctness of the grounds upon which the lower court reached its conclusion.' "].)

Appellants next argue that the compliance certifications Gonzalez signed equitably estop her from "deny[ing] that she knew her continued employment would be treated as consent to Anthem's arbitration policy." Yet, appellants acknowledge that in order for equitable estoppel to apply, " ' "the party to be estopped must be apprised of the facts . . . ." ' " (Quoting *Alameda County Deputy Sheriff's Assn. v. Alameda County Employees' Retirement Assn.* (2020) 9 Cal.5th 1032, 1072.)

As we explained in Discussion, parts B–C, *ante*, appellants have not shown that Anthem provided Gonzalez with adequate notice that working for the company would constitute implied consent to its arbitration policy. Because Gonzalez was not apprised of the relevant facts, appellants' claim of equitable estoppel necessarily fails.

Lastly, appellants assert in the factual and procedural history section of their opening brief that "Anthem employees could . . . access the current arbitration policy through a search box at the upper right-hand corner of the [Anthem intranet] page." Appellants further maintain, "The search box will recognize the word 'arbitration' [as an employee begins to type that word] and present[s] an employee with another link to the arbitration policy." Appellants do not rely upon these assertions

_____

[18] In disposing of this argument, we do not imply that the trial court did, in fact, rely upon inapposite legal authorities. We merely conclude that appellants' contention is irrelevant.

27

in the legal argument sections of their opening or reply briefs. Furthermore, appellants offer no response to Gonzalez's counter-arguments that (1) appellants did not offer sufficient evidence to show that the arbitration policy was accessible via the search box, and (2) appellants' argument "presupposes the employee had sufficient notice to search for an arbitration agreement." We thus disregard appellants' representations concerning the search box. (See *Browne*, *supra*, 213 Cal.App.4th at pp. 725–726; *Association for Los Angeles Deputy Sheriffs*, *supra*, 94 Cal.App.5th at pp. 773–774.)

For the foregoing reasons, we conclude appellants have failed to discharge their burden of overcoming the presumption of correctness accorded to the trial court's orders denying their initial and renewed motions to compel arbitration.

## DISPOSITION

We affirm the trial court's August 1, 2022 order denying the motion to compel arbitration, and we deny the petition for writ of mandate seeking review of the trial court's September 29, 2022 order denying the renewed motion to compel arbitration. April J. Gonzalez is awarded her costs for this review proceeding.

<u>NOT TO BE PUBLISHED.</u>

BENDIX, Acting P. J.

We concur:

CHANEY, J.                    WEINGART, J.

28